Edward W. GJERSTEN, et al.,
Plaintiffs-Appellees,

v.

The BOARD OF ELECTION COMMIS-
SIONERS FOR the CITY OF
CHICAGO, et al., Defendants-Appellants.

Ed. H. SMITH, et al.,
Plaintiffs-Appellees,

v.

The BOARD OF ELECTION COMMIS-
SIONERS FOR the CITY OF CHICA-
GO, et al., Defendants-Appellants.

Donald L. PAMON, et al.,
Plaintiffs-Appellees,
Cross-Appellants,

v.

The BOARD OF ELECTION COMMIS-
SIONERS FOR the CITY OF CHICA-
GO, et al., Defendants-Appellants,
Cross-Appellees.

Nos. 85–1459 to 85–1464, 85–1502
and 85–1587.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1985.

Decided May 13, 1986.

As Amended May 27, 1986.

Michael Levinson, Bd. of Election Comm., C. Richard Johnson, Isham, Lincoln & Beale, David Melcer, State's Atty., Cook County, Chicago, Ill., for defendants-appellants.

Thomas Johnson, Chicago, Ill., for plaintiffs-appellees.

Before COFFEY, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Under Illinois law, a candidate for the office of ward committeeman must submit a nominating petition containing the signatures of ten percent of the electors in his ward. However, a candidate for the office of township committeeman need only acquire the signatures of five percent of the electors in the township. Ill.Ann.Stat. ch. 46, § 7–10(i) (Smith-Hurd Supp.1983). In this case, several potential candidates for the office of ward committeeman challenged the constitutionality of the State's minimum signature requirement for access to the ballot. The district court, concluding that the signature requirement violated the equal protection clause of the fourteenth amendment, granted the plaintiffs' motion for summary judgment. The court enjoined the Chicago Board of Election Commissioners (Board) from refusing to place on the ballot any candidate for ward committeeman who had obtained signatures of five percent or more of the primary electors in his party and ward. It further ordered the Board to conduct special elections in specified wards. The court also denied the plaintiffs' motion for summary judgment on the issue of money damages. The defendants appeal the court's decision to issue the injunctions, and several plaintiffs cross-appeal the court's decision not to grant their motion for summary judgment on the question of damages.[1] We affirm the district court's decision to enjoin further use of the ten-percent signature requirement. However, we find that the district court did not engage in the careful analysis required before a federal court declares a state election invalid and imposes the drastic remedy of a special election. Therefore, we reverse and remand this

---

1. Initially, the parties claimed this court had jurisdiction pursuant to 28 U.S.C. § 1291 (1982). Following briefing and oral argument, this court *sua sponte* ordered the parties to file supplemental briefs on the issue of jurisdiction because the district court's order did not appear to be a final order. In their supplemental briefs, the plaintiffs admit that the district court did not enter a final order in this case. The question of money damages is as yet unresolved in the district court. The cross-appeal seeking

review of the court's decision to deny summary judgment on the damage issue is dismissed for lack of jurisdiction.

The court does have jurisdiction pursuant to 28 U.S.C. § 1292(a) (1984) to consider the district court's decision to issue injunctions prohibiting future use of the ten-percent signature requirement and ordering special elections. *Parks v. Pavkovic*, 753 F.2d 1397, 1402 (7th Cir.1985); *see Martinez v. Mathews*, 544 F.2d 1233, 1236 (5th Cir.1976).

case for further action consistent with this opinion.

## I

### FACTS

The Illinois Election Code, Ill.Ann.Stat. ch. 46, §§ 1–1 to 30–3, regulates the internal structure of political parties in Illinois. According to the statutory scheme, the party is governed by the state central committee and the county central committees. Ill. Ann.Stat. ch. 46, § 7–7. The county central committee consists of the various precinct, township and ward committeemen. Ill.Ann.Stat. ch. 46, § 7–8(d). In Cook County, the central committee contains representatives from both the city of Chicago and suburban Cook County. While Chicago is divided into wards, suburban Cook County is divided into townships. Both ward committeemen and township committeemen serve on the Cook County Central Committee.[2] Every four years, on the third Tuesday in March, the citizens of the wards and townships cast their votes for representatives to the Cook County Central Committee. Ill.Ann.Stat. ch. 46, § 7–8(b).

The statute also establishes the method by which a candidate can have his name included on the ballot: "The name of no candidate for ... township committeeman ... or ward committeeman ... shall be printed upon the primary ballot unless a petition for nomination has been filed in his behalf as provided in this Article." Ill.Ann. Stat. ch. 46, § 7–10. The statute requires that a candidate for ward committeeman submit a nominating petition containing signatures of not less than ten percent nor more than sixteen percent of the primary electors of his party in his ward. The same section of the statute requires that a candidate for township committeeman file a petition including signatures of not less than five percent nor more than eight percent of the primary electors of his party in his township. Ill.Ann.Stat. ch. 46, § 7–10(i).[3] The Board of Election Commissioners reviews the signatures in the nominating petition; determines whether the petition contains the required number of valid signatures; and decides if a candidate's name will be included on the ballot. Ill.Ann.Stat. ch. 46, § 7–13.[4]

Shortly before the March 1984 election, the Board refused to include on the ballot the names of several candidates for ward committeeman. The Board concluded that their nominating petitions did not contain the requisite number of valid signatures. The candidates and several of their voter supporters filed suit in federal district court challenging the constitutionality of the signature requirement.[5] The plaintiffs immediately sought an injunction requiring the Board to place their names on the ballot. The district court concluded: that it was highly likely that the plaintiffs would succeed on the merits; that the plaintiffs would suffer irreparable injury if an injunction did not issue; that the harm to the plaintiffs exceeded the potential harm to the defendants; and that public interest favored issuing the injunction. The court ordered the names of plaintiffs Tillmon, Eddings, Smith, Streeter and Margolus placed on the ballot in their wards. *Smith v. Board of Election Commissioners*, 587 F.Supp. 1134 (N.D.Ill.1984).

Following the court's ruling, many other potential candidates who had been excluded from the ballot filed motions to intervene in

---

**2.** Votes on the committee are weighed according to the degree of party support exhibited in that ward or township at the previous election. The formula for weighing the votes applies equally to both ward and township committeemen. *See* Ill.Ann.Stat. ch. 46, § 7–8(d).

**3.** The statute specifically defines primary electors and the method for calculating the minimum number of signatures required. *See* Ill. Ann.Stat. ch. 46, § 7–10(k).

**4.** The candidate may seek judicial review of the Board's decision. *See* Ill.Ann.Stat. ch. 46, § 10–10.1.

**5.** The political parties themselves have expressed no opinion on the record. The Republican and Democratic candidates filed separate suits challenging the constitutionality of the statute. The court consolidated the suits for the purpose of resolving this issue.

the suit and to have their names placed on the ballot. The court granted motions to intervene filed by plaintiffs Pamon, Dixon, Forte, McDermot, Benjamin and Leonard. However, the court found that the proximity of the election shifted the balance in favor of the defendants and therefore refused to enter a mandatory injunction requiring the Board to place the intervenors' names on the ballot. The Board conducted the primary election on March 20, 1984. Candidates Tillmon, Streeter and Margolus were victorious in their respective wards.

After the election, the Board appealed the district court's decision to grant the preliminary injunction. This court held that the issues raised in that appeal were moot because the Board had already held the election. However, we also noted that, since there was a strong probability that these candidates would find themselves frustrated by the same signature requirement in the next election, the underlying action in the district court was not moot. *Gjertsen v. Board of Election Commissioners*, 751 F.2d 199 (7th Cir.1984). The case in the district court proceeded with the filing of a motion for summary judgment by the plaintiffs. The district court, relying on the analysis developed in the ruling on the preliminary injunction, held Ill.Ann. Stat. ch. 46, § 7–10(i) unconstitutional. The court recognized that the state has an interest in controlling access to the ballot but found no justification for the ten-percent signature requirement in the city wards if the five-percent requirement was sufficient to protect the state's interest in the suburban townships. The court therefore granted the plaintiffs' motion for summary judgment and decided that the appropriate remedy was a special election in each ward in which a plaintiff met the five-percent signature requirement. The court also denied the plaintiffs' motion for summary judgment on the issue of money damages.

The Board filed a motion seeking reconsideration. The district court refused to vacate its order but granted a stay of the special elections pending the outcome of this appeal. The Board appealed the district court's decision which granted the plaintiffs' motion for summary judgment and issued injunctions prohibiting future use of the ten-percent signature requirement and ordering special elections. Several plaintiffs cross-appealed the court's decision not to award money damages. The cross-appeal is dismissed for lack of jurisdiction.[6]

II

## CONSTITUTIONALITY OF THE STATUTE

The statute in question is part of a legislative scheme to regulate access to the ballot and to preserve order in the election process. Although the plaintiffs alleged that the statute violated both the first and fourteenth amendments, the district court considered only the equal protection challenge. We find that our analysis can properly be limited to the question whether the district court correctly held that the geographic classification established by the statute violates the equal protection clause.

In deciding the case before us, we must follow the leading Supreme Court case dealing with equal protection challenges to ballot access requirements, *State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979). In that case, the Supreme Court considered a different portion of the Illinois Election Code, Ill.Ann.Stat. ch. 46, § 10–2 (Supp.1978). Under that provision, to gain access to the ballot, all candidates for offices of political subdivisions of the state who were from new or independent political parties had to submit nominating petitions containing signatures of five percent of the number of persons who voted at the previous election for that office. However, candidates seeking a statewide office who were from new and independent political parties were required to obtain signatures from 25,000 qualified voters. The Court noted that, "in the city of Chicago, applica-

6. *See supra* note 1.

tion of this standard has produced the incongruous result that a new party or an independent candidate needs substantially more signatures to gain access to the ballot than a similarly situated party or candidate for statewide office." *Id.* at 176–77, 99 S.Ct. at 986–87. Although the statute treated all candidates for citywide office who were from new or independent political parties in the same way, the Supreme Court determined that the statute incorporated a geographic classification. "For purpose of setting the minimum-signature requirement, the Code distinguishes state candidates, political parties, and the voters supporting each, from city candidates, parties, and voters." *Id.* at 183, 99 S.Ct. at 990. The Court then concluded that the state had offered no justification for imposing the higher minimum signature requirement on citywide candidates than the requirement imposed on statewide candidates. *Id.* at 186, 99 S.Ct. at 991. Moreover, the Court found that the higher signature requirement imposed in the city was not the least restrictive means for furthering the state's legitimate interest in controlling access to the ballot. "The Illinois Legislature has determined that its interest in avoiding overloaded ballots in statewide elections is served by the 25,000-signature requirement. Yet appellant has advanced no reason, much less a compelling one, why the State needs a more stringent requirement for Chicago." *Id.* The Court held the geographic classification unconstitutional "insofar as it required independent candidates and new political parties to obtain more than 25,000 signatures in Chicago." *Id.* at 187, 99 S.Ct. at 991.

In this case, the district court employed the analysis established in *Socialist Workers Party.* The court found that, in Cook County, the offices of ward committeeman and township committeeman were the same office. Significantly, ward and township committeemen serve on the same county central committee.[7] Yet, application of Ill. Ann.Stat. ch. 46, § 7–10(i) in Cook County has produced the result that a candidate from Chicago (ward committeeman) needs substantially more signatures to gain access to the ballot than a candidate from the suburbs (township committeeman). The district court concluded that the Illinois legislature had determined that its interest in controlling access to the ballot was served, at least in the suburbs, by the five-percent requirement and that the state failed to provide any justification for the higher signature requirement for ward committeeman. The district court, therefore, held that the statute, to the extent that it made it more difficult in Cook County for candidates for ward committeeman than candidates for township committeeman to have their names included on the ballot, violated the equal protection clause.[8] On appeal, the defendants question: the analysis used by the district court; the sufficiency of the record; and the plaintiffs' failure to establish significant community support. We will consider each argument.

### The District Court's Analysis

The defendants first argue that the district court failed to take a hard look at the signature requirement and its actual effect on access to the ballot. The Board claims

---

7. The defendants have argued that the offices of ward and township committeemen in Cook County are not identical. They argue that the record lacks any evidence indicating that the offices are the same and that in fact the ward and township committeemen serve different constituencies with different problems. We agree with the district court that the way particular ward or township committeemen administer their office does not create an issue of material fact. *Smith,* 587 F.Supp. at 1149 n. 16. It is clear from the statutory provisions which create the offices and define the duties that these offices are identical. To create a genuine issue of fact, the defendants would have been required

to present evidence to explain why apparently identical offices required different signature requirements. The defendants have offered no evidence.

8. This case is even stronger than *Socialist Workers Party.* In that case, the Supreme Court found a violation of equal protection when the state failed to justify the discrepancy in signature requirements between candidates seeking different offices at different levels of government. In this case, all of the candidates seek a position on the same central committee.

that the court did not engage in the comprehensive constitutional analysis required by both the Supreme Court and this court. The Supreme Court has recently renewed its caution against applying a "litmus-paper test" to separate valid from unconstitutional restrictions on access to the ballot. *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) (citing *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974)). Similarly, this court has held that *Socialist Workers Party* does not stand for the "broad proposition that a state may never impose a higher signature requirement for an office of a smaller subdivision than the requirement imposed for any office of a larger subdivision." *Bowe v. Board of Election Commissioners*, 614 F.2d 1147, 1151 (7th Cir.1980). Our holding today does not conflict with either principle.

The appellants submit that, contrary to established precedent, the district court failed to balance carefully the state's interest in controlling access to the ballot against the candidates' right to have their names placed on the ballot and the voters' right to cast their votes effectively. However, in our view, the district court properly understood the equal protection analysis mandated by *Socialist Workers Party*. In analyzing the ten-percent requirement, the court did not blindly rely on *Socialist Workers Party*. It applied no "litmus-paper test." Rather, its opinion reflects a careful analysis of the pleadings, the statute, the affidavits, the evidence of the statute's effect in past elections and the evidence presented during a two-hour hearing on the motion for a preliminary injunction. The district court began by recognizing the explicit legislative judgment that a five-percent signature requirement was sufficient to protect the state's interest in an election for the same office in suburban Cook coun-

ty. Although provided ample opportunity, the defendants presented no justification for the ten-percent requirement. In the absence of such a justification, the equal protection analysis developed in *Socialist Workers Party* does not require the court to further balance interests of the state against the rights of the candidates and voters.

*Sufficiency of the Record*

The Board has also repeatedly argued that the record is insufficient to support the district court's judgment.[9] We disagree. In *Socialist Workers Party v. Illinois State Board of Elections*, 566 F.2d 586 (7th Cir.1977), *aff'd*, 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1978), this court affirmed the district court's permanent injunction preventing the Chicago Board of Election Commissioners from enforcing the higher signature requirement for citywide candidates. This court further held that an evidentiary hearing was unnecessary where the defendants had previously been afforded an opportunity to submit evidence and where a factual hearing could not have altered the result. 566 F.2d at 587. In deciding whether the record is adequate at this stage in the litigation, we must keep in mind that the district court considered only the equal protection challenge. The statute created a geographic classification; the state offered no reason for this disparate treatment; there is no indication that a further evidentiary hearing would have produced any further justification. The record in this case was adequately developed for resolution of the equal protection issue on a motion for summary judgment.

*Issue of Community Support*

Finally, the Board argued that the plaintiffs failed to establish that they were serious candidates with a strong base of community support and that the ten-per-

---

9. The Board relies on *Bowe v. Board of Election Commissioners*, 614 F.2d 1147, 1152 (7th Cir. 1980), in which this court held that it was not an abuse of discretion for the district court to deny a preliminary injunction "without the development of a factual record as to the circumstances, background and operation of the statute in question...." At issue in *Bowe* was a

comparison of the higher signature requirement for ward committeeman to the signature requirement for a variety of other offices. In this case, the court compares the signature requirements for offices distinguished only by a geographic boundary line. The holding in *Bowe* does not prohibit the permanent injunctive relief granted in this case.

cent requirement prevented the names of serious candidates from appearing on the ballot.[10] However, the analysis employed by the Supreme Court in *Socialist Workers Party* does not require that the plaintiff establish the strength of his campaign before challenging the statute. If the court were faced with the often difficult task of determining whether a particular percentage signature requirement is the least restrictive burden on the candidates, the evidence the defendants seek might be relevant and helpful. However, in this case, the Illinois legislature has already determined that a signature requirement as low as five percent is sufficient to ensure that only the names of serious candidates appear on the ballot.

The record before the district court presented no genuine issue of material fact. Summary judgment was appropriate. The district court, relying on the holding of *Socialist Workers Party,* properly held that Ill.Ann.Stat. ch. 46, § 7–10(i), to the extent that in Cook County it imposes a higher percentage signature requirement for access to the ballot for the office of ward committeeman than for township committeeman, is unconstitutional. We affirm its decision to enjoin the use of this requirement in the future.

## III

### SPECIAL ELECTIONS

The district court ordered special elections in all those wards in which a plaintiff who submitted nominating petitions meeting the five-percent requirement was denied access to the ballot because he had not submitted sufficient valid signatures to meet the ten-percent requirement. Although federal courts have the power to invalidate elections held under constitutionally infirm conditions, *Hadnott v. Amos,*

394 U.S. 358, 367, 89 S.Ct. 1101, 1106, 22 L.Ed.2d 336 (1969), the courts need not exercise this power in the case of all elections held pursuant to unconstitutional statutes. *Connor v. Williams,* 404 U.S. 549, 550, 92 S.Ct. 656, 657–58, 30 L.Ed.2d 704 (1972); *Reynolds v. Sims,* 377 U.S. 533, 585, 84 S.Ct. 1362, 1393–94, 12 L.Ed.2d 506 (1964). When fashioning the appropriate remedy, the court must rely on equitable principles. *Reynolds,* 377 U.S. at 585, 84 S.Ct. at 1393–94; *Baker v. Carr,* 369 U.S. 186, 250, 82 S.Ct. 691, 727, 7 L.Ed.2d 663 (1962) (Douglas, J., concurring).

■ In this case, the district court not only enjoined future use of the unconstitutional statute, but also declared the most recent election held pursuant to the statute invalid and ordered new elections in several wards. The remedy of a special election has been described by courts as "drastic if not staggering," *Bell v. Southwell,* 376 F.2d 659, 662 (5th Cir.1967), and as an "extraordinary remedy which the courts should grant only under the most extraordinary of circumstances." *Smith v. Paris,* 257 F.Supp. 901, 905 (M.D.Ala.1966), *modified,* 386 F.2d 979 (5th Cir.1967).[11] A federal court reaching into the state political process to invalidate an election necessarily implicates important concerns of federalism and state sovereignty. It should not resort to this intrusive remedy until it has carefully weighed all equitable considerations.

Federal courts have struggled to articulate an easily applied test to determine when the court should invalidate a state election and order a special election. Like many judicial decisions requiring a balancing of equitable concerns, the balancing and weighing process is not easily susceptible to quantification or formalization. Some courts have invalidated state elections when the unconstitutional factor has

---

10. The plaintiffs did submit evidence of the restrictive effect of the statute in past elections. Moreover, all of the plaintiffs demonstrated at least some community support. In fact, three of the five candidates whose names were placed on the March 1984 ballot by court order won their elections.

11. *See generally* Starr, *Federal Judicial Invalidation As A Remedy For Irregularities In State Elections,* 49 N.Y.U.L.Rev. 1092 (1979).

so infected the electoral process as to call into question the very integrity of the election and no adequate pre-election remedy was available to the plaintiffs. *Bell*, 376 F.2d at 664. Other courts would set aside a state election if the unconstitutional factor "could very well have modified the outcome of the election," *Coalition for Education v. Board of Elections*, 370 F.Supp. 42, 57 (S.D.N.Y.1974), *aff'd*, 495 F.2d 1090 (2d Cir.1974), or if the plaintiffs could establish a "reasonable possibility" that the factor "affected the outcome of the election." *Smith v. Cherry*, 489 F.2d 1098, 1103 (7th Cir.1973).

█ Rather than utilizing a general rule, each case must be considered individually. There is no all-encompassing list of factors which a court must consider in determining whether to order special elections. In each case, the court must carefully consider both the integrity of the electoral system and the necessities of the process of governing. For instance, a district court must consider whether the plaintiffs filed a timely[12] pre-election request for relief. *Toney v. White*, 488 F.2d 310, 313–14 (5th Cir. 1973). The court must also require the plaintiffs to demonstrate that the unconstitutional practice had a significant impact on the particular election they seek to have declared invalid. If the plaintiffs establish that they pursued their rights in a timely fashion and that the election is suspect, the court must balance the rights of the candidates and voters against the state's significant interest in getting on with the process of governing once an electoral cycle is complete. Special elections not only disrupt the decision-making process but also place heavy campaign costs on candidates and significant election expenses on local government. The state also has an interest in placing a reasonable limit on the number of times voters are called to the polls. *Lynch v. Illinois State Board of Elections*, 682 F.2d 93, 97 (7th Cir.1982).

█ In our view, this record indicates that the district court did not carefully weigh the factors which must be considered before a federal court takes such an intrusive step into the political machinery of state government. An appellate court will normally give great deference to the district court's decision as to the precise equitable relief necessary in a particular case. *Griffin v. Burns*, 570 F.2d 1065, 1079 (1st Cir.1978); *Coalition for Education*, 495 F.2d at 1094. However, in this case, the district court did not adequately consider all the relevant equitable factors. We cannot sanction the use of the drastic remedy of special elections on the record before this court.

In this case, the district court stayed the holding of the special election pending appeal to this court. On remand, the district judge must consider not only the foregoing factors but also whether, at this point, in the terms of the offices in question, a special election would constitute an unwarranted interference with the process of state government. In this regard, we note and the district judge must consider the legislative determination in Illinois that, when a vacancy occurs in the last twenty-seven months of a four year term, a special election need not be held. *See Lynch*, 682 F.2d at 97.

Accordingly, the judgment of the district court, insofar as it hold the ten-percent requirement, Ill.Ann.Stat. ch. 46, § 7–10(i), unconstitutional and enjoins its operation, is affirmed. The order of special elections is reversed[13] and the case is remanded for

---

12. Admittedly, it is not always easy to determine whether the plaintiffs have made a timely attempt to protect their rights. Timeliness must be judged by the knowledge of the plaintiffs as well as the nature of the right involved. When circumstances permit, a district court should be afforded sufficient time in advance of an election to rule without disruption of the electoral cycle.

13. Since we are reversing the order of a special election, we need not consider the defendants' argument that, due to the method of examining the nominating petitions, some of the plaintiffs may not have met the five-percent requirement.

further proceedings consistent with this opinion.

AFFIRMED in Part; REVERSED and RE-MANDED in Part.