WILLIAM LOCKHART *et al.*, Petitioners-Appellants, v. THE COOK COUNTY OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

First District (6th Division) No. 1—02—0576

Opinion filed March 15, 2002.

Law Offices of Evangeline Levison, of Chicago (Evangeline Levison, of counsel), for appellants.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Donna M. Lach, and Benjamin Bilton, Assistant State's Attorneys, of counsel), for appellees County Officers Electoral Board, David Orr, Dorothy Brown, and Richard A. Devine.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Mathias W. Delort and W. Grant Farrar, of counsel), for appellee Steven Burris.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Petitioners William Lockhart and Ralph Bellamy appeal the trial court's judgment affirming the decision of the Cook County Officers Electoral Board (Electoral Board) finding that the nomination papers of respondent Steven Burris, a candidate for the office of member of the Cook County Board of Review (Board of Review), were valid and contained a sufficient number of signatures to warrant inclusion of his name on the ballot for the March 19, 2002, general primary election. Petitioners contend on appeal that Burris' name must be removed from the ballot because the Electoral Board erroneously applied section 7—10(c) of the Election Code (10 ILCS 5/7—10(c) (West 2000)) to determine the minimum number of signatures required and thus improperly concluded that Burris' nomination papers contained a sufficient number of signatures.

Burris filed nomination papers with the Cook County clerk (Clerk) to be a Democratic candidate in the March 19, 2002, general primary election for the office of member of the Board of Review, third board of review member district. Petitioners filed a petition objecting to those nomination papers, alleging that the required number of valid signatures was 7,120, and that Burris' papers contained fewer than 7,120 valid signatures. Burris filed a motion to strike and dismiss the petition, alleging that pursuant to section 7—10(c) of the Election Code (10 ILCS 5/7—10(c) (West 2000)), the required number of valid signatures was one-third of 7,120 or 2,374.

On February 4, 2002, the Electoral Board conducted a hearing on Burris' motion. Burris introduced a copy of the Clerk's 2002 election

calendar, which lists various county offices and the number of signatures that candidates for those offices must obtain in order to have their names placed on the ballot. The election calendar states that Democratic candidates for the countywide offices of county clerk, treasurer, sheriff, assessor, and president—county board, must obtain 7,120 signatures. However, unlike the signature requirement of 7,120 listed next to the other countywide offices, the 7,120 figure next to the Board of Review is followed by an asterisk indicating:

> "Neither the Revenue Act nor the Election Code contains a specific method for calculating a minimum signature requirement for Board of Review, and no method of calculating the signature requirement has been subjected to judicial scrutiny. Prospective candidates are advised to consult legal counsel."

The Electoral Board noted that the registration records summary indicated that Burris had approximately 4,769 valid signatures and, on its own motion, adopted this figure as the number of valid signatures obtained by Burris. At the conclusion of the hearing, chairman Daniel Madden, the Clerk's representative on the Electoral Board, found that the final sentence of section 7—10(c) of the Election Code (10 ILCS 5/7—10(c) (West 2000)) provided the appropriate formula for determining the number of signatures that Burris was required to obtain. In applying this formula, Madden divided 7,120, the number of required signatures for those seeking countywide offices in the 2002 Democratic primary, by 3, the number of Board of Review districts in Cook County, to find that Burris was required to obtain 2,374 signatures. In support of this finding, Madden noted that there is a "strong public policy" in the Election Code in favor of having smaller signature requirements for offices that run within a district of a larger unit than for offices which run in the entire unit. Madden further noted that the legislation creating the three-member district Board of Review did not address this policy, and that nothing in the statutes indicated that in terms of signature requirements a Board of Review candidate who runs in a district one-third the size of the county should be treated as if he were running for a countywide position such as assessor, sheriff, or county clerk. Madden additionally stated that due to the need for expedition, the Electoral Board's written decision would not recite its analysis in full, but would instead rely upon the analysis in the hearing transcript.

Petitioners filed a petition for judicial review of the Electoral Board's decision in the circuit court pursuant to section 10—10.1 of the Election Code (10 ILCS 5/10—10.1 (West 2000)). Following a hearing on the petition, the trial court affirmed the Electoral Board's decision to keep Burris' name on the ballot.

■ Petitioners contend on appeal that the trial court erred by finding that the Electoral Board properly applied section 7—10(c) of the Election Code to determine the number of signatures Burris was required to obtain in order to have his name placed on the ballot as a candidate for the Board of Review. Initially, we note that we are required to review the Electoral Board's decision rather than the trial court's decision. *Calabrese v. Chicago Park District*, 294 Ill. App. 3d 1055, 1065 (1998). Petitioners argue that the Electoral Board failed to set forth in writing findings in support of its decision as required by section 10—10 of the Election Code. 10 ILCS 5/10—10 (West 2000)). We note, however, that the record contains a four-page written decision which references the hearing record containing the findings made by the Electoral Board at the conclusion of the hearing. We reject petitioner's argument that the decision of the Electoral Board was deficient for failure to articulate written findings. Based on the totality of the circumstances, including the complete record, the findings of the Electoral Board were sufficient for purposes of our review.

■ ■ The issue before us turns on the interpretation of a statute; therefore, it is a question of law subject to *de novo* review. *Zapolsky v. Cook County Officers Electorial Board*, 296 Ill. App. 3d 731, 733 (1998). Subsections (a) through (k) of section 7—10 of the Election Code list various categories of elective offices as well as specific offices and set forth the requisite number of signatures or method for determining that number which candidates running for those offices must obtain on their petitions for nomination. 10 ILCS 5/7—10(a) through (k) (West 2000). Section 7—10(c) addresses the number of signatures that candidates for county offices must obtain on their petitions for nominations. Section 7—10(c) provides in pertinent part as follows:

"Such petitions for nominations shall be signed:
* * *

(c) If for a county office (including county board member and chairman of the county board *where elected from the county at large*), by at least .5% of the qualified electors of his party cast at the last preceding general election in his county." (Emphasis added.) 10 ILCS 5/7—10(c) (West 2000).

However, the final sentence of section 7—10(c) states:

"In the case of an election for *county board member to be elected from a district*, for the first primary following a redistricting of county board districts or the initial establishment of county board districts, then by at least .5% of the qualified electors of his party in the entire county at the last preceding general election, divided by the number of county board districts, but in any event not less than 25 qualified primary electors of his party in the district." (Emphasis added.) 10 ILCS 5/7—10(c) (West 2000).

Petitioners contend that the legislature did not expressly articulate in the Election Code the method for calculating the number of signatures needed for nomination papers for the Board of Review, but instead delegated to the Clerk the authority for establishing this method. Petitioners further contend that the Clerk exercised that authority to interpret section 7—10(c) of the Election Code and properly concluded that membership on the Board of Review was a "county office" other than "county board member." Thus, petitioners argue, the requisite number of signatures Burris was required to obtain was at least .5% of the votes cast by Democratic electors in the last general election or 7,120, the number included in the Clerk's 2002 election calendar.

Respondents contend, on the other hand, that under section 7—10(c) "an election for county board member to be elected from a district" includes an election for the office of member of the Board of Review. Thus, according to respondents, the signature calculation method included in the final sentence of section 7—10(c) of the Election Code applied. This method required Burris to obtain a number of signatures equal to "at least .5% of the qualified electors of his party in the entire county at the last preceding general election, divided by the number of county board districts."

The County of Cook is divided into three board of review districts and the General Assembly redrew these districts following the 2000 census. Public Act 92—462, eff. August 22, 2001; 10 ILCS 106/1 *et seq.* (West 2000). The issue is whether under 7—10(c) of the Election Code the number of signatures Burris was required to obtain in order to have his name placed on the ballot as a candidate for the office of the Board of Review in a redistricting year was the number of signatures required for countywide candidates, divided by the number of county board districts, here, three. Here, the Clerk expressly advised prospective candidates for the Board of Review in its election calendar to consult legal counsel regarding the signature requirement since it had not been subjected to judicial scrutiny.

Petitioners contend that membership on the Board of Review is a "county office" and not membership on a "county board." In support of this contention, they argue that the language of section 7—10(c) is ambiguous, that the Election Code does not define "county board member," and that the definitions of "county board" and "local assessment officers" contained in the Property Tax Code (35 ILCS 200/1—35, 1—85 (West 2000)), which includes the enabling legislation for the Board of Review (35 ILCS 200/6—5 through 6—55 (West 2000)), are controlling.

When construing a statute, our primary goal is to determine

and give effect to the intent of the legislature. *Whelan v. County Officers' Electoral Board of Du Page County*, 256 Ill. App. 3d 555, 558 (1994). Inquiries into legislative intent begin with the language of the statute, which is "the most reliable indicator of the legislature's objectives in enacting a particular law." *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). We must give statutory language its plain and ordinary meaning, and when the language is clear and unambiguous, we must apply the statute without resorting to additional aids of statutory construction. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). When construing a statute, we may consider "the reason and necessity for the statute and the evils it was intended to remedy" (*In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001)), and we presume the legislature did not intend absurdity or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

■ Applying the above principles to the instant case, we find that the language of section 7—10(c) of the Election Code is not ambiguous and conclude that an election for "county board member to be elected from a district" includes an election for membership on the Board of Review. The first sentence of section 7—10(c) requires those running for county office (including county board member and chairman of the county board *where elected from the county at large*) to obtain a number of signatures on their petitions equal to at least ".5% of the qualified electors of his party cast at the last preceding general election in his county." 10 ILCS 5/7—10(c) (West 2000). The final sentence of the section requires those running for county board member to be elected from a district, for the first primary following a redistricting of county board districts, to obtain at least ".5% of the qualified electors of his party in the entire county at the last preceding general election, *divided* by the number of county board districts." (Emphasis added.) 10 ILCS 5/7—10(c) (West 2000).

Here, Burris is running for membership on the Board of Review, a county board, and is to be elected by voters within a district, rather than by voters within the entire county, in the first primary following a redistricting of county board districts. Accordingly, we find that the method for calculating the requisite number of signatures contained in the final sentence of section 7—10(c) is applicable in the instant case. We affirm the Electoral Board's finding, pursuant to that method of calculation, that Burris was required to obtain at least 2,374 valid signatures. Burris obtained in excess of 2,374 valid signatures. Therefore, we hold that the nomination papers of Burris contained a sufficient number of signatures and that his name shall not be stricken from the ballot for the March 19, 2002, general primary election.

"The primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters." *Merz v. Volberding*, 94 Ill. App. 3d 1111, 1118 (1981). Our holding today is consistent with that purpose. Burris is not to be elected from the county at large but, rather, from the specific district in which he is running. Construing section 7—10(c) to require him to obtain the same number of signatures as those running for offices that are elected by the entire county would not only unfairly penalize Burris, but would also compromise the right of the voters in Burris' district to cast their votes effectively. See *Merz*, 94 Ill. App. 3d at 1118 (recognizing the right of voters to cast their votes effectively).

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

GALLAGHER, P.J., and O'BRIEN, J., concur.