SIXTH DIVISION

March 12, 2004

No. 1-04-0138

CATHERINE BERGMAN,

Petitioner-Appellant,

v.

MARIA VACHATA, Individually and as Village President; EDWARD METZ, JR., Individually and as Village Clerk and as Local Election Official; MARK ANDERSON, as the Longest-Serving Village Trustee; THE VILLAGE OF LYONS MUNICIPAL ELECTORAL BOARD; ANTOINE PARKER, Proponent; and DAVID ORR, as Cook County Clerk,

Respondents-Appellees.  

)))))))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Robert W. Bertucci,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

This case is an appeal of a final order of the circuit court of Cook County affirming the order of the Village of Lyons Municipal Electoral Board (the Electoral Board) directing that a public question be printed on the ballot for the March 16, 2004, primary election in the Village of Lyons (Village).  The public question is a back door referendum that would allow the citizens of the Village to vote regarding the issuance of $4 million in alternative revenue bonds.  The public question proponents gathered the requisite number of signatures on the petition.  This appeal involves the validity of the petition seeking to place the back door referendum on a ballot.  Petitioner, Catherine Bergman, appeals the decision of the circuit court of Cook County affirming the decision of the Electoral Board allowing the referendum to be placed on the ballot for the Village of Lyons' primary election to be held on March 16, 2004.  We affirm the judgment of the circuit court and affirm the decision of the Electoral Board.

BACKGROUND
(footnote: 1)
 The Village board of trustees of the Village of Lyons, an Illinois municipal corporation, passed an ordinance authorizing the issuance of alternate revenue bonds in the amount of $4 million for a development to be built in the Village.  Subsequently, respondent Antoine Parker (the proponent), and other unidentified proponents filed petitions seeking the placement of a back door referendum on the ballot.  A “back door referendum” is “the submission of a public question to the voters of a political subdivision, initiated by a petition of voters or residents of such political subdivision, to determine whether an action by the governing body of such subdivision shall be adopted or rejected.” 10 ILCS 5/28–2(f) (West 2000); see also 
Brennan v. Kolman
, 335 Ill. App. 3d 716, 718, 781 N.E.2d 644, 645 (2002).  Because the bonds' principal and interest may be paid from 
ad valorem
 property taxes upon all taxable property in the Village of Lyons, the Illinois legislature has given the citizens of a municipality the right to subject the issuance of such bonds to a back door referendum. 30 ILCS 350/15 (West 2000).  Thus, the petitions here sought to challenge the $4 million bond issue and submit the question to the voters as to whether the Village should be allowed to issue the bonds.

On October 15, 2003, petitioner filed a verified objector's petition alleging that the referendum petition did not contain the necessary 389 required signatures and failed to meet various requirements of the Illinois Election Code (the Election Code) (10 ILCS 5/1–1 
et seq
. (West 2002)).  The objections included the following: (1) petition signatures were not genuine; (2) some of the signers resided outside of the district; (3) signers were not registered voters; (4) there were duplicate signatures; (5) there was a pattern of fraud; (6) circulators were not present when the petitions were signed; (7) the county of the signers was omitted, (8) the petitions lacked a circulator's signature; (9) the word “knowledge” was omitted in the circulator's affidavit; (10) the composition of the Electoral Board included two members who should have been removed because of bias; (11) the petitions lacked the address of a circulator; and (12) a circulator omitted a county.

On October 22, 2003, a hearing was held, at which petitioner declined the opportunity to present evidence or make any legal argument to five of these objections.  She offered no evidence to prove her allegations regarding a pattern of fraud, a circulator's address, a circulator's county, the circulators not witnessing the signing of the petitions, or omission of the signers' county.

As to the 232 objections to petition signatures, the omission of the word “knowledge” in the circulator's affidavit, and the allegation that the petitions were not signed by the circulators, the Electoral Board held several hearings to weigh the evidence presented and the legal arguments between the dates of October 22, 2003, and December 18, 2003.

As respondents note, the first ruling made by the Electoral Board was to adopt the “Rules for Hearings and Decisions of the Duly Constituted Electoral Board for the Hearing and Passing upon of Objections to Petitions for Public Questions to be Placed on the Ballot in the Village of Lyons, Cook County, Illinois” (the Board Rules).  Petitioner did not enter an objection.

Paragraph 5 of the Board Rules expressly states as follows:

“The objector shall present his/her case in chief after the consideration of such preliminary motions.  The objector shall bear the burden of presenting evidence sufficient to support a decision sustaining the objection.  The applicable evidentiary threshold shall be a 'preponderance of the evidence.' ” 

Thus, the Board Rules clearly place the burden of proof on petitioner to prove her objections. 

On November 17, 2003, after much delay due to the fire at 69 W. Washington Street in Chicago, the parties participated in a binder check, which is used to initially determine the validity of objections to individual signatures and circulators.  The binder checker for the Cook County clerk sustained 188 of the 232 objections.  The Cook County clerk sustained objections as to “signature not genuine signature of purported voter” where the petition signatures were printed or where the clerk believed the signature on the petition differed in any way from the signature on the voter registration signature cards.  Approximately 66 of the objections were sustained by the binder checker because the signer had printed his/her signature on the petitions and signed in cursive on the voter registration cards.  Respondents concede that the Cook County clerk's sustaining of the objections then shifted the burden of proof onto the proponent to rehabilitate 56 names because 389 signatures were needed for ballet access.

The proponent entered several exhibits into evidence which included affidavits of signers, selected registration records, selected binder check signatures, the Cook County voter registration list, and “Rehabilitation of Signatures--Matching of Petition Signatures to Binder Review Report.”  Along with these exhibits and the original petitions, the Electoral Board reviewed, one by one, the signatures that were objected to by petitioner and sustained by the binder check.  Petitioner entered no affidavits or witness testimony or any evidence to counter the proponent's evidence.  The Electoral Board rehabilitated 61 of the signatures.  The Electoral Board found that 394 valid petition signatures had been filed, five signatures more than the 389 required.

Petitioner called one witness, Steven Mazur, to the stand who testified as follows:

“Q. Did you see Maureen and John Jacobson sign?

A. Yes, I did.

Q. And did they each sign their own?

A. Yes, they did.

Q. Did you do an affidavit for them?  Did you go back to their home?

A. I believe so.

Q. I ask you to look at affidavit--I am going to show you a copy of affidavit 37 and affidavit 38, and were you there when those affidavits were presented, or did you present those affidavits?

A. Yes, I was there.

Q. Who else was there?

A. The notary--.”

The Electoral Board also considered legal arguments concerning the signing of the petitions by the circulators, the omission of the word “knowledge” in the circulators' affidavit contained in the petition and the sufficiency of the notary jurat in both the petitions and the affidavits.  Based on the evidence presented and the legal arguments made, the Electoral Board voted to sustain the petitions and overruled the objections raised by petitioner.  On December 19, 2003, the Electoral Board issued its final decision overruling the objections, declaring the petitions valid, and ordering the referendum question to be printed on the March 16, 2004, ballot.

Thereafter, petitioner filed a petition for judicial review in the circuit court of Cook County.  After four hours of oral argument, the court affirmed the Electoral Board's decision in its entirety.

Petitioner filed the instant appeal raising the following issues: (1) whether the petition was legally deficient because the circulator's statement failed to include the word “knowledge”; (2) whether the petition was legally deficient because printed names are not acceptable as a voter's “signature”; (3) whether the rulings by the Electoral Board and circuit court as to signature verification were against the manifest weight of the evidence; and (4) whether the composition of the Electoral Board deprived the objector of her right to a fair trial.  

ANALYSIS

We allowed an expedited appeal pursuant to Supreme Court Rule 311 (155 Ill. 2d  R. 311).  We are required to review the Electoral Board's decision rather than the trial court's decision.  
Lockhart v. Cook County Officers Electoral Board
, 328 Ill. App. 3d  838, 841, 767 N.E.2d 428, 430 (2002).  Petitioner has raised some issues that turn on the interpretation of a statute, which is a question of law subject to 
de novo
 review.  
Lockhart
, 328 Ill. App. 3d at 841, 767 N.E.2d at 431.  She has also raised an issue that challenges the factual findings of the Electoral Board.  Our standard of review will be whether those findings were against the manifest weight of the evidence.  
King v. Justice Party
, 284 Ill. App. 3d  886, 672 N.E.2d 900, 902 (1996).

We first address petitioner's argument that the lack of a circulator's signature attesting to the circulator's statement violates the mandatory provisions of the Election Code and that, therefore, the petitions here should have been invalidated.  The relevant section of the Election Code reads as follows:

“At the bottom of each sheet of such petition shall be added a circulator's statement, signed by a person 18 years of age or older who is a citizen of the United States, stating the street address or rural route number, as the case may be, as well as the county, city, village or town, and state;  certifying that the signatures on that sheet of the petition were signed in his or her presence and are genuine, and that to the best of his or her knowledge and belief the persons so signing were at the time of signing the petition registered voters of the political subdivision or district or precinct or combination of precincts in which the question of public policy is to be submitted and that their respective residences are correctly stated therein.” 10 ILCS 5/28–3 (West Supp. 2001).

In the present case, the circulator's signature is found within the notary's jurat.  Thus we find 
Brennan v. Kolman
, 335 Ill. App. 3d  716, 781 N.E.2d 644 (2002), controlling and conclude that the circulator did sign the petition sheet.
  We reject petitioner's arguments that 
Brennan
 is distinguishable.

We additionally reaffirm our holding that substantial compliance can satisfy even a mandatory provision of the Election Code. 
 We reject petitioner's contention that 
Brennan
 was wrongly decided.  Petitioner argues that substantial compliance is no longer sufficient and has asserted that 
Brennan
, “in recent holdings, stands alone in allowing substantial compliance with mandatory provisions of the [Election] Code.”  As support for her position, petitioner relies on the Fifth District case of 
Knobeloch v. Electoral Board
, 337 Ill. App. 3d 1137, 788 N.E.2d 130 (2003), which she contends
 is “well-reasoned.”

We do not agree with the 
Knobeloch
 court's interpretation of the Illinois Supreme Court case of 
DeFabio v. Gummersheimer
, 192 Ill. 2d  63, 66, 733 N.E.2d 1241 (2000), as rejecting the substantial compliance theory for mandatory provisions.  
DeFabio
 was a case involving 
noncompliance
, not substantial compliance.
  “Substantial compliance” was neither raised by the parties nor addressed by the court in 
DeFabio
.  We interpret the 
DeFabio 
opinion as standing for the proposition, with which we agree, that mandatory provisions must be complied with 
even where parties agree there is no knowledge or evidence of fraud or corruption
.  In 
DeFabio
, it was undisputed by the parties that none of the invalidated ballots in a particular precinct contained the requisite initials from an election judge.  Thus, not only was compliance not strict, compliance 
was not
 substantial; indeed there was 
no
 compliance.  
Cf. King v. Justice Party
, 284 Ill. App. 3d  886, 891, 672 N.E.2d 900, 904 (1996) (“Compliance was not strict, it 
was
 substantial; but it was compliance nonetheless. (Emphasis added.)”).

Petitioner also cites 
Bowe v. Chicago Electoral Board
, 79 Ill. 2d 469, 404 N.E.2d 180 (1980), for the proposition that mandatory provisions in the Election Code cannot be satisfied by “substantial compliance.”  Again, we do not interpret 
Bowe
 as rejecting the 
doctrine
 of substantial compliance.  Rather, in 
Bowe
 there was no substantial compliance, 
as a matter of fact
.  Thus, there was 
no
 compliance. 

   In 
Lewis v. Dunne
, 63 Ill. 2d  48, 344 N.E.2d 443 
(1976), the Illinois Supreme Court held that a candidate's name should appear on the ballot where there was substantial compliance with section 7–10 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 7–10).  
Lewis
, 63 Ill. 2d  at 53, 344 N.E.2d 443.  We believe that 
Lewis
 remains good law.
  We disagree with the petitioner's argument that the doctrine of substantial compliance has been rejected by our supreme court.  We further conclude that because the circulator's signature is found within the notary's jurat, the petitions were not invalid on the basis that they lacked a separate signature line.

Petitioner has further challenged the petitions' compliance with the statute based upon the lack of the word “knowledge” in the circulator's affidavit.  Section 28–3 of the Election Code provides, in pertinent part, as follows:

“Form of petition for public question. * * * 

At the bottom of each sheet of such petition shall be added a circulator's statement, signed by a person 18 years of age or older who is a citizen of the United States, stating the street address or rural route number, as the case may be, as well as the county, city, village or town, and state;  certifying that the signatures on that sheet of the petition were signed in his or her presence and are genuine, and that 
to the best of his or her knowledge and belief
 the persons so signing were at the time of signing the petition registered voters of the political subdivision or district or precinct or combination of precincts in which the question of public policy is to be submitted and that their respective residences are correctly stated therein.  Such statement shall be sworn to before some officer authorized to administer oaths in this State.”(Emphasis added.) 10 ILCS 5/28 –3 (West Supp. 2001). 

In the case at bar, each of the circulators' affidavits contained the phrase “to the best of his or her belief” and did not include the word “knowledge.”  We agree with the argument of the respondents on this issue.  Despite the lack of the word “knowledge,” we conclude that the affidavits were in substantial compliance with the Election Code.

The next argument raised by petitioner is that the voters who printed their names on the petition, instead of “signing” in cursive, should not be counted.  Although it is true that several individuals printed their names, we conclude that there was substantial compliance where, despite some voters not signing in the cursive, there was no evidence that they did not sign “in their own proper person only,” and the form nonetheless contains the notary jurat.

We also find 
Huskey v. Municipal Officers Electoral Board
, 156 Ill. App. 3d 201, 509 N.E.2d 555 (1987), upon which petitioner relies, to be factually distinguishable. 
 Huskey
  “held that when the sheets of a nominating petition submitted by a purported circulator evidence a pattern of fraud, false swearing and total disregard for the mandatory requirements of the Election Code [citation], the sheets purportedly circulated by that individual should be stricken in their entirety.”  See 
Canter v. Cook County Officers Electoral Board
, 170 Ill. App. 3d  364, 368, 523 N.E.2d 1299, 1301 (1988), citing 
Huskey
, 156 Ill. App. 3d at 205.  
Huskey
 involved actual evidence that the circulator permitted individuals to sign the names of family members who were not present, and that someone other than the affiant presented the petition to signers.   Thus, it was undisputed that the voters did not sign “in their own proper person only.”  We are faced with no such impropriety here, notwithstanding petitioner's arguments concerning the “potential” for such an impropriety and her unsupported and unproven allegations regarding such an impropriety.  While this may have been petitioner's theory, she failed to provide any evidence to support her allegations.

We agree with petitioner that fraud in the electoral process is a valid concern, but, in the instant case, petitioner failed to show any such fraud was present.  Petitioner now challenges the veracity of the statements in the affidavits.  But, under the Board Rules, the burden of proof in the proceeding to contest the petitions lies with the petitioner. 
 Cf.
 
Hagen v. Stone
, 277 Ill. App. 3d  388, 660 N.E.2d 189 (1995).

Petitioner's fourth argument is that the rulings made as to individual names by the Electoral Board were against the manifest weight of the evidence.  We first review the well-established principles regarding judicial review of a decision of an electoral board.

“The findings of fact of an electoral board are 
prima facie
 true and correct. [Citation.]

The function of a court on judicial review is to ascertain whether the findings and decision of the electoral board are against the manifest weight of the evidence. [Citation.]  
A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident
. [Citation.]

The fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently based upon the same evidence will not justify a reversal of the findings of an administrative agency. [Citation.]  Determinations as to the weight of evidence and the credibility of witnesses are uniquely within the province of the agency [citation], and a court will not substitute its judgment for that of the agency on such matters [citation].  Where the findings of the agency are supported by competent evidence in the record, its decision should be affirmed.  [Citation.]” (Emphasis added.)
  King v. Justice Party
, 284 Ill. App. 3d  886, 888, 672 N.E.2d 900, 902 (1996).

Petitioner argues that there is 
no
 evidence in the record to support the Electoral Board's findings.  We disagree.  During the hearing, proponents submitted affidavits from several voters containing the statement that the “signature written on the referenced petition paper is my signature for the purposes of the petition papers.”  The Board Rules, which govern the admissibility of evidence before the Electoral Board provide, in relevant part:

“The Electoral Board will consider such admissible evidence as may be submitted, including, 
but not limited to
, properly authenticated public records, 
other
 documentary evidence, reliable affidavits, and oral testimony. * * * The Electoral Board will, where practicable and appropriate, follow (
but will not be bound by
) rules of evidence which prevail in Illinois courts of law. ” (Emphasis added.)

The Electoral Board made its factual determinations as to the validity of the signatures based, in part, upon the affidavits of those voters attesting to the signatures as theirs.  Those decisions were made by the Electoral Board without an expert in handwriting analysis.  Petitioner now asks this court to review the determinations made by the Electoral Board.  She does not provide a transcript or a complete record, but instead asks us to review the “most outlandish decisions.”  We may agree that the signatures do not match and speculate that the voter stated in his affidavit that the signature was his when it was, in fact, somebody else's signature.  But “[t]he fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently based upon the same evidence will not justify a reversal.”  
King v. Justice Party
, 284 Ill. App. 3d 886, 888, 672 N.E.2d 900 (1996).  It is not the role of this court to retry factual issues.  We cannot say on the record before us that the decision of the Electoral Board was against the manifest weight of the evidence.

The fifth and last issue raised by the petitioner concerns the composition of the Electoral Board.  Although petitioner claims that her due process rights were violated as a result of the bias of two of the board members who did not recuse themselves, petitioner seeks no relief from this court as to this particular issue.  She acknowledges the type of relief that she would have sought if this were not an expedited matter.  Due to the necessity of an expedited decision on the other issues, she now merely seeks an advisory opinion and requests that this court “address the problem and find that the two electoral board members 
should have been
 removed and two, disinterested and impartial public members appointed by the Chief Judge as specified in the statute.” (Emphasis added.)  She further avers that “
If
 time was not of the essence for [her], the correct relief and prayer 
would be
 to impanel an impartial electoral board of public members and allow [her] a fair and impartial hearing.” (Emphasis added.)  She now desires only a finding that the two members “
should have been
 disqualified.” (Emphasis added.)  We conclude that (1) the issue is moot; and (2) petitioner has failed to raise any exception to the mootness doctrine as to why this court should address the issue.  We decline to address the issue.

We believe that it is incumbent upon us to further comment on statements contained in petitioner's brief in this appeal.  While we understand that petitioner took a position that two of the members of the Electoral Board were biased based on the fact that they had personally signed a petition to have the referendum question placed on the ballot, we do not believe that certain statements contained in her brief were proper.  In her argument that the Electoral Board's rulings were against the manifest weight of the evidence, petitioner's brief contains an assertion that “the two 'proponent' votes on the Electoral Board 
obediently took their commands from Proponent's counsel
 and ruled each and every affidavit a valid document sufficient to overcome the findings of the Cook County clerks who had made a comparison and ruled the names not valid at the live record examination in the County Clerk's office.” (Emphasis added.)  This statement, which goes well beyond an assertion of bias or prejudice, and amounts to 
ad hominem
 attacks upon the character and integrity of the two board members, is improper.  Petitioner and her counsel are admonished to refrain from making such statements in the future.

This admonition applies to yet another highly inappropriate statement contained in petitioner's brief.  Petitioner mislabeled her appendix as “Appendix A, Transcript of Judge's Ruling,” but failed to provide this court with a transcript of the hearing in the circuit court.  Nonetheless, in describing her version of what transpired during the hearing, petitioner's brief contains the following accusation:

“The lower court, 
bound and determined to affirm the electoral board
, attempted to seek his own evidence from 'anyone in the courtroom,' over the vigorous objection of the [petitioner.]  This was an obvious attempt to find something for the record to hold that estoppel or some type of relief was warranted as in the 
Brennan
 case.  
Although not finding any 'takers' to his offer to come forward
 and volunteer information as to where the referendum petition form originated, the circuit court judge found 
Brennan
 applied to the case at bar.” (Emphasis added.)  

Respondents counter that not only does petitioner put words in the trial judge's mouth, but she attempts to read his mind.  We believe that, regardless of petitioner's position that the trial judge should have limited his review to the record before him, petitioner's insinuations regarding the trial judge's motives are wholly inappropriate and impugn the integrity of the judiciary.  Petitioner and her counsel would be well advised to refrain from taking such an accusatory tone in the future.

CONCLUSION

For the reasons stated, we affirm the judgement of the circuit court of Cook County and affirm the decision of the Village of Lyons Municipal Electoral Board.

Affirmed.

FITZGERALD SMITH, J., concurs.

JUSTICE TULLY, dissenting:

I respectfully dissent.

The provisions of the Election Code are designed to protect the integrity of the electoral process.  
Welch v. Johnson
, 147 Ill. 2d 40, 56 (1992).  There is no dispute that the provisions in section 5/28–3 are mandatory.  A mandatory provision is one that will describe the consequences of failing to follow its provisions (
Johnson v. Theis
, 282 Ill. App. 3d 966, 972 (1996)), and the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by a failure to act in the manner specified.  
Shipley v. Stephenson County Electoral Board
, 130 Ill. App. 3d 900, 903 (1985).  The failure to follow a mandatory provision renders the proceeding to which it relates illegal and void.  
Serwinski v. Board of Election Commissioners
, 156 Ill. App. 3d 257, 259 (1987).

Essentially, the majority here believes that even though this is a mandatory provision, the substantial compliance with this provision negates the defective petition.  The majority accepts the theory of substantial compliance with mandatory provisions and reaffirms the recent appellate court decision in 
Brennan v. Kolman
, 335 Ill. App. 3d 716 (2002).

I however believe that the Illinois Supreme Court's decision in 
DeFabio v. Gummersheimer
, 192 Ill. 2d 63, 66 (2000), is controlling.  In 
Gummersheimer
, the supreme court rejected the use of the substantial compliance theory for mandatory provisions in the Code.  I believe that 
Gummersheimer 
held that substantial compliance is no longer sufficient and a mandatory provision of the Election Code must be enforced even if the parties agree there is no knowledge or evidence of fraud or corruption.

The petitions in this case contain two significant irregularities, and I believe that the majority errs when it dismisses these problems through its substantial compliance analysis.

First, the Election Code expressly requires that each petition contain a statement that to the best of his or her "knowledge and belief" the signers are registered voters of the appropriate political subdivision.  10 ILCS 5/28–3 (West 2000).  The petitions at issue, however, merely state the circulators' "belief" that the signers are registered voters.  Although the majority dismisses this distinction with its substantial compliance analysis, I believe that the lack of the word "knowledge" is highly significant.  I believe the use of the word "knowledge" is calculated to impress on circulators an affirmative obligation to make reasonable inquiry regarding the status of those signing the petition.  A circulator attesting only to his "belief" may mistakenly assume that he may do so even if that belief is unreasonable or has no basis in fact.  For example, a circulator might "believe" that every person he encounters outside a grocery store is a resident of the village in which the store is located.  Such a belief might mislead the circulator into believing that it was unnecessary to even make a simple inquiry regarding the signers' residence, and undermine the important role envisioned for petition circulators in the election code.  Accordingly, I would conclude that the failure to include the word "knowledge" in the circulators' statements renders the petitions invalid.

Second, the petitions are facially invalid because it is impossible to determine whether they were properly signed by the circulators.  The purported "signatures" are contained within the jurat of the notary public.  These "signatures" may be the actual signatures of the circulators or they may have been completed by the notary who attested to the signatures.  It is simply impossible to determine from the face of these documents.  The majority would conclude that these signatures were properly made.  I, however, am unwilling to do so in the absence of evidence to support such a conclusion.  I believe that the requirements of the Election Code are too important to allow this court to judge compliance on little more than guesswork and conjecture.  Accordingly, I would hold that, in the absence of evidence that the circulators' signatures were properly made, the ambiguity in the attestation requires a finding that the petitions are invalid.

Finally, although the discrepancies I have identified above are sufficient to invalidate all of the petitions, I believe that the majority overlooks significant evidence of fraud.  The objector identified numerous voter signatures on the petitions that do not match the signatures contained in the voting records.  Some signatures are printed rather than written in script, and others are, even to the untrained eye, clearly dissimilar.  I believe that the Electoral Board's and the trial court's findings that these signatures were valid were against the manifest weight of the evidence.

For the foregoing reasons, I would reverse the judgments of the circuit court and the Electoral Board.

FOOTNOTES
1:
In view of the time constraints faced by petitioner, when we granted her motion for an expedited appeal, we further granted her motion to allow the appendix to her brief to serve as the record on appeal.  Subsequently, after reading petitioner's brief and appendix, it became clear that she failed to provide this court with an adequate statement of facts or sufficient information.  Therefore, we rely on the more comprehensive statement of facts found in respondents' brief.