# Illinois Official Reports

## Appellate Court

---

### *Ramirez v. Chicago Board of Election Commissioners,*
### 2020 IL App (1st) 200240

---

| | |
|---|---|
| Appellate Court Caption | JAY RAMIREZ, Petitioner-Appellant, v. THE CHICAGO BOARD OF ELECTION COMMISSIONERS, as a Duly Constituted Electoral Board and Its Members, MARISEL A. HERNANDEZ, Chair, WILLIAM J. KRESSE, Commissioner, and JONATHAN T. SWAIN, Commissioner; THE CHICAGO BOARD OF ELECTION COMMISSIONERS in Its Capacity as Election Authority for the City of Chicago; and LAUREN WEBER, Objector, Respondents-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-20-0240 |
| Filed | February 21, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2020-COEL-000007; the Hon. Sharon M. Sullivan, Judge, presiding. |
| Judgment | Affirmed with instructions. |
| Counsel on Appeal | Pericles C. Abbasi, of Chicago, for appellant.<br><br>Adam W. Lasker, of Chicago, for appellee Chicago Board of Election Commissioners.<br><br>Lauren Weber, of Chicago, objector-appellee *pro se*. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     Petitioner Jay Ramirez appeals the February 7, 2020, order of the circuit court of Cook County that affirmed the January 21, 2020, decision of the Chicago Board of Election Commissioners (board). The board had ordered petitioner's name *not* to "be printed on the official ballot for the General Primary Election to be held on March 17, 2020." For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     In its memo[1] to this court, the board stated that it "concurs with the factual and procedural background" provided by petitioner in his brief, and objector Lauren Weber also stated in her memo that she likewise "agrees" with petitioner's statement of facts. Thus, the facts are not in dispute, and we summarize them below.

¶ 4     On December 2, 2019, petitioner filed his nomination papers for the office of Democratic Ward Committeeperson of the First Ward of the City of Chicago. On December 9, 2019, Lauren Weber filed a petition challenging the sufficiency of his papers, alleging that he had not submitted the legally required number of signatures. The board determined that petitioner had submitted 896 valid signatures, and the board's determination of the number of valid signatures that he submitted is not in dispute on appeal. What is in dispute is the number of valid signatures that are required. The board determined that the minimum number of valid signatures required is 1032, while petitioner argues that the minimum number is only 599. Their respective arguments, based on their interpretations of the relevant statute, are discussed below.

¶ 5     In its January 21, 2020, decision, the board rejected petitioner's argument and found that, as a result, he had an insufficient number of valid signatures, which barred his placement on the ballot. On January 27, 2020, he filed a petition for judicial review. On February 7, 2020, after briefing and oral argument, the circuit court affirmed the board's decision. On the same day as the circuit court's decision, petitioner filed a notice of appeal. On February 11, 2020, this court granted his motion for an expedited appeal and to allow the parties to file memoranda in lieu of briefs.

¶ 6                                     ANALYSIS
¶ 7                               I. Standard of Review
¶ 8     Where an electoral board's decision has been reviewed by a circuit court, the appellate court generally reviews the decision of the electoral board rather than the decision of the circuit court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212

---

[1]This court granted petitioner's motion to allow the parties to file memoranda, instead of briefs, on appeal.

(2008) ("where a circuit court reviews an electoral board's decision *** we review the decision of the board, not the court"); *Cortez v. Municipal Officers Electoral Board*, 2013 IL App (1st) 130442, ¶ 14; *Pascente v. County Officers Electoral Board*, 373 Ill. App. 3d 871, 873 (2007); *Rita v. Mayden*, 364 Ill. App. 3d 913, 919 (2006).

¶ 9        We review questions of fact deferentially and will disturb factual determinations only if they are against the manifest weight of the evidence. *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 832 (1997). A judgment is against the manifest weight of the evidence when an opposite conclusion is readily apparent or when the findings appear to be unreasonable, arbitrary, or not based upon the evidence. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996).

¶ 10        When the dispute concerns whether a candidate's nominating papers complied substantially with the Election Code (10 ILCS 5/1-1 (West 2018)), then the question is purely one of law and our standard of review is *de novo. Pascente*, 373 Ill. App. 3d at 873; *Salgado v. Marquez*, 356 Ill. App. 3d 1072, 1075 (2005) ("[T]he question presented to us is whether Marquez's nominating petitions meet the requirements of section 7-10 of the Illinois Election Code [citation]. This is a question of law, which we review *de novo*."); *Heabler v. Municipal Officers Electoral Board*, 338 Ill. App. 3d 1059, 1060 (2003) ("We review the decision of the Electoral Board *de novo* because it involves a question of law.").

¶ 11        In addition, since the resolution of this appeal requires us to interpret a section of the Election Code, it presents a question of statutory interpretation that we also review *de novo. Maschek v. City of Chicago*, 2015 IL App (1st) 150520, ¶ 42; *Metzger v. DaRosa*, 209 Ill. 2d 30, 34 (2004). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 12                                II. Statutory Interpretation

¶ 13        When we construe the meaning of a statute, "the primary objective of this court is to ascertain and give effect to the intention of the legislature, and all other rules of statutory construction are subordinated to this cardinal principle." *Metzger*, 209 Ill. 2d at 34; see also *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 361 (2009) ("[t]he primary objective of statutory interpretation is to give effect to the intent of the legislature"). "The plain language of the statute is the best indicator of the legislature's intent." *Metzger*, 209 Ill. 2d at 34-35. "When the statute's language is clear, it will be given effect without resort to other aids of statutory construction." *Metzger*, 209 Ill. 2d at 35. "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003).

¶ 14        "When interpreting legislative enactments, we must read the statute as a whole and not as isolated provisions." *Metzger*, 209 Ill. 2d at 37. In this endeavor, we consider both any stated purpose of the particular code, as well as what Illinois courts have previously determined the purpose of the code to be. *Metzger*, 209 Ill. 2d at 37. We view the code "as a whole" in order to determine the purpose that the code was "primarily designed" to accomplish. *Metzger*, 209 Ill. 2d at 38.

¶ 15        When a statute or code fails to define a word or phrase, then it is the job of the courts to ascertain its meaning. *Brandt Construction Co. v. Ludwig*, 376 Ill. App. 3d 94, 104-05 (2007) (" 'The province of statutory interpretation belongs specifically to the courts, which have their own expertise in statutory construction.' " (quoting *Board of Trustees of the Addison Fire*

*Protection District No. 1 Pension Fund v. Stamp*, 241 Ill. App. 3d 873, 884 (1993))).

¶ 16                                        III. Statute at Issue

¶ 17        The parties agree that the minimum signature requirement for the office of ward committeeperson is determined by section 7-10 of the Election Code (10 ILCS 5/7-10 (West 2018)), as modified by *Gjersten v. Board of Election Commissioners*, 791 F.2d 472, 473 (7th Cir. 1986). Section 7-10(i) provides, in relevant part, that, "[i]f a candidate seeks to run for ward committeeperson, then the candidate's petition for nomination must contain no less than the number of signatures equal to 10% of the primary electors of his or her party of the ward." 10 ILCS 5/7-10(i) (West 2018). The "10%" requirement mentioned in the statute was reduced to 5% by *Gjersten*, 791 F.2d at 473. Thus, a candidate needs only the number of signatures equal to 5% of the ward's primary electors.

¶ 18        To determine the number of the ward's primary electors, section 7-10(k) provides, in relevant part:

>        "For wards or districts of political subdivisions, the number of primary electors shall be determined by taking the total vote cast for the candidate for that political party who received the highest number of votes in the ward or district at the last regular election at which an officer was regularly scheduled to be elected from that ward or district." 10 ILCS 5/7-10(k) (West 2018).

¶ 19        The parties disagree about which election is "the last regular election" to be used in calculating the vote count. See 10 ILCS 5/7-10(k) (West 2018).


¶ 20                                        IV. Position at Issue

¶ 21        "The position at issue, ward committeeman, is a creation of statute much like that of a university trustee ***." *Graves v. Cook County Republican Party*, 2019 IL App (1st) 181516, ¶ 63. The Election Code provides that each primary elector may vote for one candidate of his or her party, in his or her ward, for ward committeeperson and that each candidate must be a resident of that ward. *Graves*, 2019 IL App (1st) 181516, ¶ 63 (citing 10 ILCS 5/7-8(b) (West 2016)).

¶ 22        "[O]ne of the most important functions" of a committeeperson is "voting for vacancies in the General Assembly." *Graves*, 2019 IL App (1st) 181516, ¶ 64 (citing 10 ILCS 5/25-6(a) (West 2018)). When a vacancy occurs, it is filled by appointment by a committee from that district and from the political party from which the incumbent had been elected. *Graves*, 2019 IL App (1st) 181516, ¶ 64 (citing 10 ILCS 5/25-6(a) (West 2018)). Another important function occurs when there is no congressional candidate on the ballot. Political parties are required to hold a meeting to nominate a candidate, and the meeting includes committeepersons for the affected district. *Graves*, 2019 IL App (1st) 181516, ¶ 65 (citing 10 ILCS 5/7-61 (West 2018)). In sum, ward committeepersons have "some characteristics of public officials, in that the [Election] Code provides for their election by qualified voters and gives them duties related to filling vacancies in the General Assembly and nominations for Congressional ballots." *Graves*, 2019 IL App (1st) 181516, ¶ 66. As a result, the impact of their duties extends beyond their ward. See also *Kluk v. Lang*, 125 Ill. 2d 306, 326 (1988) (the Election Code "impose[s] a set of duties on political party committees that arguably confer indicia of public agency on them

when they are performing their duties under the statute").

¶ 23                                    V. Parties' Arguments

¶ 24        The board[2] determined the signature requirement by using the vote count from the November 2018 general election. Specifically, the board based the signature requirement for the office of First Ward Committeeperson on the Democratic candidate who received the highest vote count in the 2018 general election, namely, Secretary of State Jesse White. In the First Ward, White received 20,634 votes; and 5% of this number is 1032. Thus, the board found that 1032 signatures were required.

¶ 25        Petitioner argues that, in 2018, there was no candidate elected "exclusively" by the voters in the First Ward or "for" the First Ward and, therefore, the board should have looked to the March 2016 primary election, when the First Ward elected a Democratic ward committeeperson.[3] Petitioner argues that no officer specifically representing the First Ward, such as an alderman or committeeperson, was scheduled to be elected during the November 2018 general election. At the March 2016 primary election, Susan A. Mendoza received the highest vote count. Mendoza, who was running for Comptroller, received 11,979 votes in the First Ward, and 5% of this number is 599, or what petitioner is arguing should have been required.

¶ 26        Petitioner asks this court to read section 7-10(k) as though it stated that the board should use "the last regular election at which an officer was regularly scheduled to be elected" *exclusively* "from that ward" or *for* that ward. See 10 ILCS 5/7-10(k) (West 2018). However, as petitioner readily acknowledges, neither the words "exclusively" or "for" are actually in the statute. Thus, he is asking us to read into the statute words which are not there.

¶ 27        The board rejected this argument and found that an officer is elected "from" a ward when the voters are entitled to cast votes for an officer, even if the officer is not elected exclusively from that ward.

¶ 28        In support of its plain-language finding, the board cited the Merriam-Webster Dictionary definition of "from." The first meaning given for "from" is "used as a function word to indicate a starting point of a physical movement or a starting point in measuring or reckoning or in a statement of limits." Merriam-Webster Online Dictionary, http://merriam-webster.com/ dictionary/from (last visited Feb. 19, 2020) [https://perma.cc/9SNT-33CZ]. The dictionary definition of "from" as "a starting point in measuring" does not support petitioner's argument for exclusivity.

¶ 29        The board also found that the legislature's primary purpose, as shown by the language it used, is to utilize the results of the "last regular election" (10 ILCS 5/7-10(k) (West 2018)) or the most recent available election results. The intent, according to the board, is to determine

---

[2]Objector Weber, acting *pro se*, filed a memo stating that she "agrees with all arguments set forth" in the board's memo.

[3]Petitioner acknowledges that "the last time that an officer was regularly scheduled to be elected from the First Ward was in 2019, when the First Ward elected its Alderman." However, petitioner argues that this "election cannot be used to calculate the signature minimum because it was an entirely non-partisan election with no Democratic Candidates on the ballot, and it would therefore [require] a signature minimum of 0." Petitioner acknowledges that courts will not presume that the legislature intended an absurdity and, thus, this 2019 election cannot be used.

the number of qualified primary voters currently residing in the ward. Thus, the board reasoned, reaching back four years, as petitioner seeks, instead of only a year and a half, frustrates this legislative intent. In response, petitioner argues that, if the legislature had intended for the board to simply use the results of the last preceding election, it would have said just that. However, the obvious response is that, if the legislature had intended the words "exclusively" or "for," it would also have said just that.

¶ 30    Petitioner relies heavily on *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838 (2002). However, that case is readily distinguishable from the one at bar. The first line of the statutory section at issue in *Lockhart* provided that, if a candidate was running for a county office, which the statute defined as an office "elected from the county at large," then he needed the signatures of "at least .5% of the qualified electors of his party cast at the last preceding general election in his county." 10 ILCS 5/7-10(c) (West 2000). However, the last line provided that, "[i]n the case of an election for county board member to be elected from a district, for the first primary following a redistricting," the candidate needed the signatures of "at least .5% of the qualified electors of his party in the entire county at the last preceding general election, divided by the number of county board districts." 10 ILCS 5/7-10(c) (West 2002). In *Lockhart*, the candidate and the board argued for application of the last line, which would require fewer signatures, while objectors argued for application of the first line, which would require more. *Lockhart*, 328 Ill. App. 3d at 842-43.

¶ 31    The *Lockhart* court found that the last line applied to an election for membership on the board of review because the candidate was "to be elected by voters within a district rather than by voters within the entire county." *Lockhart*, 328 Ill. App. 3d at 843. In the case at bar, petitioner argues that the *Lockhart* court thereby equated the phrase "elected from a district" (10 ILCS 5/7-10(c) (West 2002)) with being "elected by voters within a district" (*Lockhart*, 328 Ill. App. 3d at 843). However, what petitioner overlooks, and what the *Lockhart* court emphasized by placing the key phrase in italics, was the fact that the last line's reference to "elected from a district" (10 ILCS 5/7-10(c) (West 2002)) was glaringly juxtaposed against the first line's reference to "*elected from the county at large*."[4] (Emphasis in original.) *Lockhart*, 328 Ill. App. 3d at 843. This court in *Lockhart* interpreted the one statutory subsection as one consistent whole to reach a consistent finding. However, no such ready juxtaposition presents itself in the subsection that we are called upon to interpret, and thus, we do not find *Lockhart* controlling of our issue.

¶ 32    Petitioner also argues that our constitution uses the phrase "elected from" to refer *exclusively* to offices elected from one district and *for* one district. As an example, petitioner cites article IV, section 2, which provides that "[o]ne Senator shall be elected from each Legislative District." Ill. Const. 1970, art. IV, § 2(a). However, petitioner overlooks the effect of "each" in that sentence. "Each" is an adjective indicating that it is "one of two or more distinct individuals having a similar relation and often constituting an aggregate." Merriam-Webster Online Dictionary, http://merriam-webster.com/dictionary/each (last visited Feb. 19, 2020) [https://perma.cc/4ZA4-CLAT]. Thus, the word "each" has a limiting effect, indicating a limited reference to only one item in a list.

---

[4] After *Lockhart*, this statutory subsection was amended to eliminate the phrase "elected from the county at large" (10 ILCS 5/7-10(c) (West 2002)) and to replace it with "countywide" (10 ILCS 5/7-10(c) (West 2018)). See Pub. Act 93-574, § 5 (eff. Aug. 21, 2003)).

¶ 33 " 'The primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters.' " *Lockhart*, 328 Ill. App. 3d at 844 (quoting *Merz v. Volberding*, 94 Ill. App. 3d 1111, 1118 (1981)). The board's finding, which requires 1032 signatures, rather than 599 signatures, furthers that purpose by ensuring that a candidate has minimal appeal to current and eligible voters. We find that the board's interpretation is correct.

¶ 34                                   VI. Constitutional Argument Forfeited

¶ 35 In his initial memo in this appeal, petitioner raised "an as-applied violation of his equal protection rights," claiming that the Cook County clerk used a different interpretation for various 2018 township committeeperson races than the board is employing here.

¶ 36 In its responding memo, the board argued that this argument was forfeited because it was not raised before the electoral board and the petitioner did not send notice to the Illinois Attorney General of his intent to challenge the constitutionality of a statute.

¶ 37 In his reply memo, petitioner observed that, in his "Rule 20[5] motion requesting review by the board," he argued that, "due to the precedent from *Gjersten*, Township and Ward Committeepersons are substantially the same office, so the [b]oard using a signature calculation different than the Cook County Clerk that results in a disproportionately higher signature requirement is an actionable violation of his Equal Protection rights." However, this motion was submitted after the matter was fully submitted to the hearing officer, and the hearing officer had already submitted recommendations. Rule 20(a) permits a party who disagrees with the hearing officer's recommended findings and proposed decision to file a motion asking the board for review. Chicago Board of Election Commissioners Rules of Proc. R. 20(a) (adopted Dec. 16, 2019). However, Rule 20(d) provides that, if the board grants review, it "shall not be considered a trial *de novo* and the parties will, in general, be bound by the record from the proceedings before the hearing officer unless the Electoral Board determines that the interests of fairness, equity or substantial justice permit the presentation of new or additional evidence or the reopening of the hearing." Chicago Board of Election Commissioners Rules of Proc. R. 20(a) (adopted Dec. 16, 2019). In addition, the motion did not develop the legal analysis on this point beyond this sentence, and petitioner did not obtain a ruling on it from the board. Chicago Board of Election Commissioners Rules of Proc. R. 20(a) (adopted Dec. 16, 2019). "A movant has the responsibility to obtain a ruling on his motion if he is to avoid forfeiture on appeal." *People v. Urdiales*, 225 Ill. 2d 354, 425 (2007) ("Because defendant did not obtain a ruling, the issue is forfeited.").

¶ 38 "The rule of procedural default in judicial proceedings applies to the administrative determinations, so as to preclude judicial review of issues that were not raised in the administrative proceedings. The rule is based on the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it." *Cinkus*, 228 Ill. 2d at 212-13. Additionally, "judicial review" of a candidate's nomination papers "must not exceed[ ] a board's record." *Cinkus*, 228

---

[5]This is Rule 20 of the Rules of Procedure for the Board of Election Commissioners of the City of Chicago, adopted December 16, 2019.

Ill. 2d at 209. Thus, this issue is forfeited for our consideration.

¶ 39                                   VII. Relief Requested

¶ 40     Both the board and the objector also ask this court to vacate the circuit court's order of a stay and an injunction that required the board to print petitioner's name on the ballot. The board and objector ask that we order the board to remove petitioner's name from all early voting and election-day voting machines and ballots and provide ballot notices at early voting sites and applicable precincts reasonably calculated to inform voters that any votes cast for petitioner will be suppressed and not counted.

¶ 41     What we are faced with here is the balancing of two distinct rights. On the one hand, qualified voters have the right "to cast their votes effectively," which they will not be able to do if petitioner's name remains on the ballot and is later removed. *Graves*, 2019 IL App (1st) 181516, ¶ 60. On the other hand, if petitioner's name is removed at this point in the appellate process, it may adversely affect petitioner's appeal rights if he subsequently chooses to file a petition for rehearing or a petition for leave to appeal.

¶ 42     However, in the case at bar, petitioner has now lost three times: before the board, before the circuit court, and before the appellate court. As a result, we believe that his chances of succeeding on a petition for rehearing or for leave to appeal are minimal. Thus, we grant the relief sought by the board and the objector.

¶ 43                                        CONCLUSION

¶ 44     For the foregoing reasons, we affirm the board's decision.

¶ 45     Affirmed with instructions.