SIXTH DIVISION
March 16, 2007

No. 1-07-0499

VIRGINIA M. HARMON and DANA P. BAX,        )        Appeal from the
                                           )        Circuit Court of
          Petitioners-Appellees,           )        Cook County
                                           )
     v.                                    )
                                           )
THE TOWN OF CICERO MUNICIPAL OFFICERS      )
ELECTORAL BOARD, ITS MEMBERS, CHAIRMAN     )
LARRY DOMINICK, MARILYN COLPO, and in      )
her individual capacity as Town Clerk,     )
and JOSEPH VIRRUSO, FERNANDO MORAN, and    )
DAVID ORR, COOK COUNTY CLERK,              )        Honorable
                                           )        Mark J. Ballard,
          Respondents-Appellants.          )        Judge Presiding


JUSTICE McNULTY delivered the opinion of the court:

The Town of Cicero Municipal Officers Electoral Board struck the nomination papers for Dana Bax and Virginia Harmon. Bax and Harmon petitioned for judicial review of the Board's decision. The trial court reversed the Board and the Board now appeals.

BACKGROUND

Bax and Harmon filed nomination petitions for election to the office of trustee for the Town of Cicero, for an election to take place on February 27, 2007. Each candidate included in her petition more than 100 pages of signatures. Each page bore at least 1 and no more than 10 purported signatures of voters, along with the signature of the person who claimed to have circulated that page of the petition. Bax claimed that 881 voters in Cicero indicated their support for her candidacy by signing her

1-07-0499

petition. Harmon claimed that signatures of 887 voters supported her nomination.

Fernando Moran objected to both petitions. For each candidate's petition, he specified more than 400 signatures that he challenged on various grounds. The parties stipulated that the nomination petitions needed 555 signatures of voters to qualify the candidate for the ballot. Pursuant to the Board's rules, employees of the county clerk of Cook County, with notice to both the candidates and the objector, compared the petitions to voter registration records. The employees sustained objections to 197 signatures on Bax's petition and 256 signatures on Harmon's petition. The candidates have not challenged the rulings excluding those signatures.

The Board held a hearing at which the parties presented testimony, affidavits and exhibits. Moran offered into evidence affidavits of several persons who signed the candidates' petitions. All of the affiants identified their signatures on pages Jose Alanis swore he circulated. All of the affiants saw a photograph of Alanis, and all swore that a person other than Alanis obtained their signatures on the petitions.

Bax and Harmon objected to the affidavits, claiming that the unavailability of the affiants for cross-examination deprived them of due process. The Board noted that its rules expressly

-2-

permitted the Board to consider affidavits.  The Board reminded the candidates that the Board had the power to subpoena any witnesses the parties sought to examine, including the affiants. The candidates did not seek to subpoena the affiants.

Instead, Alanis obtained signatures on affidavits from several other persons listed on petitions he swore he circulated. In the affidavits those persons swore that Alanis had, in fact, requested signatures from them on the nominating petitions.

On January 24, 2007, Alanis testified before the Board that he personally circulated all of the petition pages that he signed, and he personally witnessed each signature.  Counsel for Moran asked Alanis about his preparation for testifying. Alanis swore that Bax told Alanis to come into court to testify, but she said nothing more to him.  Bax said nothing about what he should say to the Board.

A police officer identified a compact disc as a copy of a recording made by a surveillance camera in the corridor outside the courtroom on January 24, 2007, before Alanis started testifying.  The recording shows Alanis apparently speaking with Bax as they pass a police officer in the hall.

Officer Cheryl Walsh, who stood in the corridor outside the courtroom before Alanis testified on January 24, 2007, swore that she overheard part of the conversation between Alanis and Bax:

"Ms. Bax said to him that they are going to talk to you about the signatures. Alanis replied what if I don't remember. Ms. Bax replied just say yes to everything."

The Board found that neither Bax nor Harmon had presented sufficient valid signatures to permit nomination for the office of trustee. For each candidate the Board found several independent bases for holding the nominating petitions insufficient. First the Board noted that the 197 invalid signatures on the Bax petition amounted to 22% of all her signatures, and the 256 invalid signatures on Harmon's petition came to 29% of her total. The Board found that the large percentage of invalid signatures showed that "those nominating petitions, in the whole, are tainted by a pattern of fraud, false swearing and a total disregard for the mandatory requirements of the Election Code." On that basis the Board struck all pages of signatures filed for both candidates. Without any signatures, neither candidate qualified for nomination.

As its second basis for rejecting the nominating papers, the Board noted that the court clerk rejected 101 signatures on Bax's petition as invalid because "the purported signatory did not sign in his or her own proper person." From Harmon's petition the court clerk rejected 113 signatures on the same basis. The Board members inspected the exhibits and specifically found that some

of the pages of the petition appeared to have a number of different signatures written by the same hand. The handwriting looked like the signature in the voter registration records for one of the persons named and not at all like the signatures of the other persons listed. Thus, the evidence strongly suggested that the circulator permitted a single individual to sign multiple lines of the petition with different names. The Board found that the disparity between the signatures on the petitions and the signatures in voter registration records showed that the circulator for each such page of the petition acted at least in "culpable ignorance of the truth *** [with] conscious awareness of the falsity of those signatures." On the basis of that finding, the Board struck all pages of the petition on which any such signature appeared. The 101 invalid signatures on the Bax petition appeared on 54 different pages; without those pages Bax had fewer than the requisite 555 signatures. The 113 invalid signatures on the Harmon petition appeared on 61 different pages; without those pages Harmon had fewer than 400 signatures. Thus, neither candidate had sufficient signatures to qualify the candidates for nomination.

The third reason for finding that Harmon did not qualify for the ballot also derived from a decision to strike specific pages due to a pattern of fraud and false swearing. The Board found

that the county clerk sustained objections to at least half of the signatures on 25 pages of Harmon's petition. Those pages showed a pattern of fraud and false swearing that, according to the Board, warranted striking all signatures on these pages. With the 256 signatures the county clerk found invalid, invalidation of the remaining signatures on those 25 pages left Harmon with fewer than the requisite 555 signatures.

The county clerk sustained objections to at least half of the signatures on 10 pages of Bax's petition. The Board found that the pattern of fraud warranted striking all signatures on those 10 pages. If the Board struck nothing other than the 197 signatures the county clerk found invalid, and the remaining signatures on the 10 pages with at least half of the signatures invalid, Bax would have had enough signatures to qualify. The third reason for rejecting Harmon's petition does not directly apply to Bax's petition.

The remaining reasons for rejecting the petitions related to Alanis and the credibility of his attestations on numerous pages of both petitions that he personally witnessed the signatures of each of the persons who signed those pages. The Board relied primarily on two independent reasons for finding Alanis not credible and therefore rejecting all signatures on all pages he signed as circulator. The Board detailed at length the testimony

in which Alanis denied that he spoke with Bax before testifying and the contrary evidence from the surveillance camera and the testimony of Officer Walsh. Affidavits Moran obtained from several persons who signed petitions Alanis claimed he circulated provided the second independent reason for rejecting all of the signatures on the pages Alanis signed. Alanis named himself as circulator on 20 pages of Bax's petition and 13 pages of Harmon's petition. Without the signatures on those pages and the pages on which the county clerk sustained objections to at least half of the signatures, Bax did not have the 555 signatures required for the ballot. Harmon's petition fell further short of the requisite number of signatures.

Bax and Harmon petitioned for judicial review of the Board's decision. The court focused on the admission into evidence of the affidavits Moran presented. According to the court, the Board denied the candidates due process of law when it followed its rules permitting the use of affidavits without requiring Moran to bring the affiants to the hearing for cross-examination. The court separately found, without explanation, that the evidence apart from the affidavits did not sufficiently support the Board's findings. The court reversed the decision of the Board on both the Bax petition and the Harmon petition. The Board now appeals.

1-07-0499

ANALYSIS

We review the Board's findings of fact deferentially, and we will reject those findings only if they conflict with the manifest weight of the evidence. King v. Justice Party, 284 Ill. App. 3d 886, 888 (1996). Credibility determinations particularly fall within the Board's purview. King, 284 Ill. App. 3d at 888. The Board's interpretations of statutes do not bind the courts. King, 284 Ill. App. 3d at 888. We look to administrative review cases for guidance on procedures for review under the Election Code (10 ILCS 5/10-10.1 (West 2004)). See King, 284 Ill. App. 3d at 888.

Although we review the Board's decision and not the trial court's decision (Bergman v. Vachata, 347 Ill. App. 3d 339, 344 (2004)), we comment on the trial court's decision here to provide guidance in future cases. The trial court here adopted the standard of review stated in Samour, Inc. v. Board of Election Commissioners, No. 101902 (January 19, 2007). Our supreme court in Samour deferred to the trial court's factual findings and not a board's findings expressly because "[t]here [was] no decision of an administrative agency at issue" in that case. Samour, slip op. at 9. In this case, unlike Samour, the Board rendered a decision following evidentiary hearings, and the trial court heard no new evidence. Therefore, we defer to the findings of

the Board and not the trial court.

The trial court here found Moran's affidavits inadmissible. When the court rejects an evidentiary ruling or a factual finding of the Board, the court must separately consider the issue of whether the error requires reversal. See <u>Johnson v. Human Rights Comm'n</u>, 318 Ill. App. 3d 582, 587 (2000). If the factual findings independent of the error provide a sufficient basis for the Board's decision, we will affirm the decision despite the error. <u>Johnson</u>, 318 Ill. App. 3d at 587.

Here the trial court found error only in the admission into evidence of several affidavits. The Board explained several separate bases for holding the nominating petitions insufficient. At least three of the bases for the Board's rulings expressly relied not at all on any of Moran's affidavits. The trial court failed to identify any defect in the Board's findings and reasoning in support of these other bases for its holding.

Next we disagree with the trial court's rejection of all of Moran's affidavits. Board rules here, as in <u>Bergman</u>, 347 Ill. App. 3d at 348, expressly permit the Board to rely on affidavits. The subpoena power here, as in <u>Dombrowski v. City of Chicago</u>, 363 Ill. App. 3d 420, 427 (2005), sufficiently protected the candidates' rights to due process. The candidates failed to exercise the right to subpoena affiants, even after the Board

reminded them of that right. The candidates "cannot be deprived of a right they fail to exercise." Dombrowski, 363 Ill. App. 3d at 427.

The Board provided us with several distinct bases for its ruling, and the Board clarified which factual findings led to each basis for its ruling. We may affirm the Board's decision if the facts in the record suffice to support any one basis for the Board's decision. Younge v. Board of Education of the City of Chicago, 338 Ill. App. 3d 522, 530 (2003).

On 25 pages of Harmon's petition and on 10 pages of Bax's petition, the court clerk found 50% or more of the signatures invalid. The evidence in the record sufficiently supports the Board's finding that these pages evidence a pattern of false swearing that warranted the decision to strike those pages altogether. See Fortas v. Dixon, 122 Ill. App. 3d 697, 700 (1984); Canter v. Cook County Officers Electoral Board, 170 Ill. App. 3d 364, 368 (1988).

The record also supports the decision to strike all pages Alanis signed as circulator. The Board based the decision to strike the pages on the impeachment of his testimony in court. In particular Alanis testified that Bax said nothing to him to guide his testimony. Officer Walsh testified that she overheard Bax giving Alanis specific directions concerning his testimony,

1-07-0499

and a surveillance camera recording, in the Board's view, corroborated Officer Walsh's testimony. The impeachment concerned Alanis's preparation for testifying. The preparation of a witness for testimony qualifies as a proper subject of cross-examination. See West Chicago St. R.R. Co. v. Byrne, 85 Ill. App. 488, 493 (1899); People v. Scarpelli, 82 Ill. App. 3d 689, 696 (1980). The impeachment here significantly undercut the credibility of any other statements Alanis made under oath. The Board relies on the honesty of the circulator who swears that he witnessed each signature whenever the Board counts the signatures toward the number required for nomination. If the evidence supports a finding that the circulator lied under oath, it further supports a decision to refuse to count any signatures that circulator purportedly witnessed. See Fortas v. Dixon, 122 Ill. App. 3d at 701; Canter, 170 Ill. App. 3d at 369.

The affidavits of Moran's witnesses further bolster the Board's finding that Alanis lacked credibility and that all pages Alanis signed as circulator should not count toward each candidate's signature requirements. However, we find sufficient grounds for the Board's decision here apart from the affidavits at issue. The Board struck all pages on which the county clerk sustained objections to at least half of the signatures, and the Board correctly struck all pages Alanis signed as circulator.

1-07-0499

Without those pages, and without the other signatures to which the county clerk sustained objections, neither Bax nor Harmon had sufficient signatures to qualify for nomination. Accordingly, we reverse the judgment of the trial court and we affirm the Board's decision.

Reversed.

JOSEPH GORDON and QUINN, JJ., concur.