# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Crossman v. Board of Election Commissioners*, 2012 IL App (1st) 120291

---

| | |
|---|---|
| Appellate Court Caption | GARY CROSSMAN, Petitioner-Appellant, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, Sitting as the Duly Constituted Electoral Board to Hear and Pass Upon Objections to the Nomination Papers of Candidates for the Office of State Senator, 12th Legislative District, Cook County for the March 20, 2012, General Primary Election in the County of Cook, State of Illinois, and its Members, Langdon D. Neal, Richard A. Cowen and Marisel A. Hernandez and Raul Montes, Jr., Respondents-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0291 |
| Filed | February 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order dismissing a petition for judicial review of the decision of the Board of Election Commissioners for the City of Chicago overruling petitioner's objections to respondent's nomination papers as a candidate for nomination of the Democratic Party for the office of State Senator was affirmed, where the Board's findings that respondent had not engaged in a pattern of fraud and that the statement of candidacy was valid were not clearly erroneous, regardless of the alleged presence of some false signatures and the cosmetic changes made to the statement of candidacy made after it was signed and notarized, but petitioner's appeal was grounded in fact and based on a good-faith argument for the extension and modification of existing law and, therefore, sanctions pursuant to Supreme Court Rule 137 were not warranted. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-COEL-5; the Hon. Robert W. Bertucci, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Burton S. Odelson and Matthew M. Welch, both of Odelson & Sterk, Ltd., of Evergreen Park, for appellant.<br><br>Andrew Finko, of Andrew Finko, P.C., of Chicago, for appellees. |
| Panel | JUSTICE MURPHY delivered the judgment of the court, with opinion. Justices McBride and Quinn concurred in the judgment and opinion. |

## OPINION

¶ 1     Petitioner Gary Crossman appeals from an order of the circuit court of Cook County dismissing his petition for judicial review of the decision of the Board of Election Commissioners for the City of Chicago (Board) overruling his objections to the nomination papers of Raul Montes, Jr., candidate for nomination of the Democratic Party for the office of State Senator for the 12th Legislative District of the State of Illinois at the general primary election to be held on March 20, 2012. For the reasons that follow, we affirm.

¶ 2                              BACKGROUND

¶ 3     On December 9, 2011, petitioner filed a verified objector's petition to the nomination papers of Montes in which he asserted that some of the signatures included therein were forged and that other signatures were of people who were not registered voters within the district or had signed the papers multiple times. Petitioner also asserted that the papers were circulated by Montes and demonstrated a pattern of fraud and disregard of the Illinois Election Code (Code) (10 ILCS 5/1 *et seq*. (West 2010)) such that all the pages of signatures included therein should be invalidated. Petitioner further asserted that Montes's statement of candidacy was invalid because changes were made to it after it had been signed and notarized.

¶ 4     The Board conducted an examination of the voter registration records, and its petition summary report indicates that 1,000 signatures were required for placement on the ballot, that Montes obtained 1,750 signatures, that 572 of those signatures were invalid, and that 1,178 signatures were valid. A hearing officer then conducted a hearing at which Montes

testified that he personally obtained all of the signatures in his nominating petition and that David Donahue made minor changes to his statement of candidacy before it was notarized. In response to a question about a couple of signatures that were invalidated by the Board, Montes further testified that, as best as he could recall, each person signed his or her own name. Donahue, an election consultant, testified that he reviewed Montes's statement of candidacy on December 3, 2011, informed Montes that he thought it contained a couple of deficiencies, and asked Montes if he wanted him to correct them. Montes agreed, and Donahue made changes to the document by circling the word "nomination" in two places, adding the letters "th" to the number 12 in two places, circling the word "city" once, and writing the words "Legislative District" in the box marked "District." Donahue further testified that the statement had already been notarized when he reviewed it and made changes to it.

¶ 5    The hearing officer entered a report recommending that Montes not be placed on the ballot because his statement of candidacy was invalid where Donahue made changes to it after it had been signed and notarized and Montes failed to sign and notarize the statement again after the changes had been made. The hearing officer also found that Montes's nominating petition contained a sufficient number of valid signatures and that petitioner had not proved that Montes had engaged in a pattern of fraud or acted with the guilty knowledge required to establish fraud where he testified that, to the best of his knowledge, the signatures in his petition were genuine.

¶ 6    Montes filed a motion requesting the Board reverse that portion of the hearing officer's recommendation directing that he not be placed on the ballot because his statement of candidacy was invalid, and the Board subsequently entered a decision overruling petitioner's objections to Montes's nomination papers and directing that Montes's name be placed on the ballot. In doing so, the Board found that Montes's statement of candidacy was in substantial compliance with the Code prior to Donahue's changes. The Board also adopted the hearing officer's recommended findings and conclusions of law as to petitioner's claim that Montes had engaged in a pattern of fraud.

¶ 7    Petitioner then filed a petition for judicial review and a supporting memorandum of law with the circuit court of Cook County in which he asserted that Montes had engaged in a pattern of fraud and that his statement of candidacy was invalid. In his response, Montes asserted that petitioner had failed to establish his claims and requested the court impose sanctions against him because his petition was filed in bad faith and without a sufficient basis in fact or law. The court then entered an order denying petitioner's petition and declining to impose sanctions.

¶ 8                                    ANALYSIS

¶ 9    On appeal from a circuit court's review of a decision of an electoral board made pursuant to the Code, this court will review the decision of the board, and not the court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). In determining whether Montes had engaged in a pattern of fraud and whether his statement of candidacy was invalid because changes were made to it after it had been signed and

notarized, the Board was required to examine the legal effect of a given set of facts, and we therefore review its decision under the clearly erroneous standard of review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). A decision is clearly erroneous where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 10                                                    I. Pattern of Fraud

¶ 11        Petitioner first contends that Montes's nomination petition should be invalidated because he engaged in a pattern of fraud and false swearing in obtaining the signatures included therein. Pursuant to the Code, each page of signatures in a nominating petition must include a circulator statement certifying that the signatures on that page were signed in the circulator's presence and are genuine. 10 ILCS 5/7-10 (West 2010). The requirements set forth in section 7-10 of the Code are mandatory, and signatures collected in violation of those requirements are invalid. *Bowe v. Chicago Electoral Board*, 79 Ill. 2d 469, 470 (1980). Where the signature sheets of a nominating petition submitted by a circulator evidence a pattern of fraud, false swearing, and total disregard for the requirements of the Code, the sheets circulated by that individual should be stricken in their entirety. *Canter v. Cook County Officers Electoral Board*, 170 Ill. App. 3d 364, 368 (1988).

¶ 12        The record shows that Montes personally obtained all the signatures in his nominating petition, that he signed each sheet of signatures as the circulator to certify that they were made in his presence and were genuine, and that 572 of the 1,750 signatures were found by the Board to be invalid. Plaintiff asserts that 241 of those signatures were found to be invalid because they were not genuine and that 61 of the 70 pages of signatures in Montes's petition contained at least one such signature. Petitioner maintains that the evidence thus shows that Montes falsely swore that the signatures were genuine on 61 of the 70 pages of signatures and establishes a pattern of fraud and false swearing by Montes such that all the pages of signatures he obtained should be stricken in their entirety. Because Montes obtained all the signatures in his petition, petitioner concludes that they should all be stricken.

¶ 13        Petitioner relies on this court's holding in *Harmon v. Town of Cicero Municipal Officers Electoral Board*, 371 Ill. App. 3d 1111, 1116 (2007), in which the Board's decision to strike all pages to which the court clerk sustained objections to at least half of the signatures was affirmed by this court. In this case, however, the record shows that 44% of the signatures on sheet 2 of Montes's nominating petition were deemed to be "not genuine" by the Board and that no other sheet had a proportion of "not genuine" signatures greater than 36%. Moreover, when this court affirmed the Board's decision in *Harmon*, we did not hold that the Board is required to strike an entire sheet of signatures when a certain percentage of the signatures therein are found to be "not genuine," but rather affirmed the Board's exercise of its discretion in that case. We do the same here.

¶ 14        Based on Montes's testimony, the hearing officer determined that he had not engaged in a pattern of fraud because he believed the signatures he had obtained were valid, and that finding was then adopted by the Board in its decision. Determinations as to the weight of the

evidence and the credibility of the witnesses are uniquely within the province of the Board, and this court will not substitute its judgment for that of the Board on such matters. *Bergman v. Vachata*, 347 Ill. App. 3d 339, 347-48 (2004). In this case, the hearing officer observed Montes testify and was in the best position to assess his credibility and determine the weight to be given to his testimony. As such, we will not substitute our judgment for that of the hearing officer and the Board, and we therefore conclude that the Board's decision that Montes had not engaged in a pattern of fraud is not clearly erroneous.

¶ 15                              II. Statement of Candidacy

¶ 16    Petitioner next contends that Montes's statement of candidacy is invalid because Donahue made changes to it after it had been signed and notarized. Montes responds that his statement of candidacy substantially complied with the requirements set forth in section 8-8 of the Code (10 ILCS 5/8-8 (West 2010)) prior to Donahue's changes and that the changes made to the statement were minor. The Code provides that the statement of candidacy:

> "shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate is a qualified primary voter of the party to which the petition relates, is qualified for the office specified and has filed a statement of economic interests as required by the Illinois Governmental Ethics Act, shall request that the candidate's name be placed upon the official ballot and shall be subscribed and sworn by such candidate." *Id.*

¶ 17    The record shows that Donahue changed Montes's statement of candidacy by circling the word "nomination" in two places, adding the letters "th" to the number 12 in two places, circling the word "city" once, and writing the words "Legislative District" in the box marked "District." Thus, before those changes were made, the statement set forth Montes's name and address and indicated that he was running for the office of "State Senator" in district "12" as a Democrat in the primary to be held on March 20, 2012. In concluding that Montes's nomination papers were valid, the Board determined that the changes made to his statement could be characterized as *de mimimis* where the added information would not have cured what would otherwise be considered a legal deficiency and that the statement was in substantial compliance with the Code before those changes were made.

¶ 18    A candidate's name will not be removed from the ballot due to a minor error in a nominating petition where there is no basis for confusion as to the office for which the petition was filed and there is no conflict between the statement of candidacy and nominating petition in that regard. *Sullivan v. County Officers Electoral Board of Du Page County*, 225 Ill. App. 3d 691, 693 (1992). In this case, the information provided in the statement of candidacy before it was altered by Donahue was sufficient to relate that Montes was seeking to run for the office of State Senator of the 12th District in the Democratic primary to be held on March 20, 2012. The record therefore shows that Montes's statement of candidacy substantially complied with the Act's requirements prior to Donahue's changes and that those changes were merely cosmetic and did not affect the substance of the information set forth therein. As such, we conclude that the Board's finding that Montes's statement of candidacy was valid is not clearly erroneous and affirm its decision overruling petitioner's

objections to Montes's nomination papers, declaring those papers valid, and directing his name be printed on the ballot.

¶ 19                                    III. Sanctions

¶ 20      In his appellee's brief, Montes maintains that he is renewing his request that sanctions be imposed against petitioner pursuant to Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994) on "cross-appeal." The record, however, does not contain any evidence showing that Montes has filed a notice of cross-appeal as required by Illinois Supreme Court Rule 303(a)(3) (eff. June 4, 2008). As such, we lack jurisdiction over Montes's claim for sanctions. *Rodgers-Orduno v. Cecil-Genter*, 312 Ill. App. 3d 1150, 1154-55 (2000). Moreover, sanctions are not appropriate in this case where petitioner's appeal is grounded in fact and based on a good-faith argument for the extension and modification of existing law. Ill. S. Ct. R. 137 (eff. Feb. 1, 1994); *Pryor v. United Equitable Insurance Co.*, 2011 IL App (1st) 110544, ¶ 14.

¶ 21                                    CONCLUSION

¶ 22      Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 23      Affirmed.