2021 IL App (1st) 210248

FIRST DISTRICT
FIRST DIVISION
May 10, 2021

No. 1-21-0248

| | | |
|---|---|---|
| KENNETH MULDROW JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 2021 COEL 0013 |
| | ) | |
| WILLIAM BARRON, RONDAL JONES, and | ) | Honorable |
| THOMAS JACONETTY, in Their Capacities as | ) | James R. Carroll, |
| Members of the Markham Municipal Officers | ) | Judge Presiding. |
| Electoral Board; SANDRA CURTIS; and | ) | |
| KAREN YARBROUGH, in Her Capacity as the | ) | |
| Cook County Clerk, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Presiding Justice Walker and Justice Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1     In this election case, petitioner, Kenneth Muldrow Jr., appeals the Municipal Officers

Electoral Board for the City of Markham's (Board) decision striking his name from the ballot as

an independent candidate for the office of mayor of the City of Markham (City) in the April 6,

2021, consolidated general election. On appeal, Muldrow claims that his name as an independent

candidate should appear on the ballot because there was no evidence of fraud, false swearing, and

total disregard for the mandatory requirements of the Election Code (10 ILCS 5/1-1 *et seq.* (West

2018)) in his nomination papers. We affirm.

¶ 2                                        BACKGROUND

¶ 3     On December 21, 2020, Muldrow filed nomination papers to be included on the ballot as

an independent candidate for election to the office of mayor at the April 6, 2021, consolidated

general election. Muldrow's nomination papers included "45 pages of 15-line petition sheets containing a potential of 675 signatures of purported qualified voters of the City." To be included on the April 6, 2021, ballot as a mayoral candidate, an independent candidate "must present nominating petitions containing not less tha[n] 96 and no more than 154 signatures of duly qualified and registered votes of the City."

¶ 4       Sandra Curtis (objector) filed an "Objector's Petition" against Muldrow's nomination papers, raising signature and circulator-based objections. As to the signature objections, she alleged that the nomination papers contained forged signatures and included the names of individuals who were not registered voters or did not reside in the City. As to the circulator-based objections, she alleged that circulator affidavits were "false and constitute[d] a false swearing because the purported circulator did not actually obtain, solicit, or witness the affixing of voters' signatures to those sheets."

¶ 5       On January 9, 2021, Muldrow filed a motion to recuse substitute chair Alderman William Barron and member Alderman Rondal Jones and the Board's law firm "based upon conflicts of interest *** that create a bias that would not yield a fair and neutral decisions."[1] Muldrow alleged that the Board members were biased because they supported and made contributions to an opposing candidate. He claimed that the Board's law firm also supported the opposing candidate and had previously represented and continued to represent that candidate.

¶ 6       At the January 13, 2021, public hearing, the Board ordered a "records examination" and denied Muldrow's motion to disqualify members of the Board and its law firm. During the next public hearing on January 15, 2021, the Board granted the objector's request for the issuance of

---

[1]On January 7, 2021, the circuit court entered an order appointing Thomas Jaconetty "to serve as a Public Member" on the Board "to conduct hearings with respect to objections filed by Sandra Curtis to the nomination papers of Kenneth Muldrow Jr." Jaconetty replaced a Board member who had submitted candidate papers to run for the same office.

subpoenas for witnesses to testify at the January 22, 2021, hearing.[2]

¶ 7        The Board's requested "records examination" revealed that Muldrow's nomination papers had 95 valid signatures, one less than the minimum signature requirement. Muldrow filed a "Candidate's Rule 8 Motion,"[3] objecting to the records examination results and seeking "further review of the findings from the records exam."

¶ 8        On Friday, January 22, 2021, at 6 p.m., the Board conducted a public evidentiary hearing to address the objector's petition and Muldrow's Rule 8 motion. Muldrow offered affidavits to rehabilitate individual signatures identified as invalid. The Board "determined that certain, proposed affidavits were insufficient on their face and of little evidentiary weight and, therefore, were excluded from the Electoral Board's consideration." However, based on the affidavits admitted for the Board's consideration, Muldrow succeeded in rehabilitating 2 signatures, bringing the total number of valid signatures to 97, which was 1 above the required minimum of 96.

¶ 9        Regarding the objector's claims, Muldrow was called to testify as an adverse witness. Muldrow testified that he did not know a subpoena had been issued for certain named circulators, including his nephew, personal friend David Walker, and other personal friends, and "absolutely had no knowledge" that allegations were raised against those circulators that they engaged in misconduct and a pattern of fraud related to the circulation of his petition sheets. Muldrow stated, though, that he personally "asked them" to circulate petition sheets. He also testified that he was

---

[2]"The purpose of the subpoena [was] to establish that such individuals engaged in the following conduct: (i) filing of false circulator's affidavit and continues a false swearing because the purported circulator did not actually obtain, solicit or witness the affixing of voters' signatures to those sheets in violation of the Illinois Election Code; and (ii) engaging in a pattern of fraud and disregard of the Illinois Election Code by the alleged circulators inclusion and submission of voters' signatures which were not signed by the voters in their own proper persons, but rather by one or a few individuals who simply printed voters' names or forged the voters' signatures in a 'roundtable', printed or seriatim fashion. These actions also include, without limitation, these circulators signing petitions as duly qualified voters multiple times and the insertion of fake non-existent addresses alongside voter name."

[3]The "Rules of Procedure for the Municipal Officers Electoral Board of the City of Markham" were adopted by the Board on January 7, 2021.

"not sure" if someone checked the signatures and registrations, "did not know" who put his petition sheets together, or who the identified circulators gave the petition sheets to that they circulated. The Board found Muldrow's "testimony to be incredible," explaining that Muldrow, "a veteran candidate, and experienced police officer does not reasonably have such little knowledge or involvement with his own nominating petitions upon which his mayoral candidacy rests."

¶ 10    At the conclusion of Muldrow's testimony, the objector attempted to call circulator Walker to testify and the following events transpired:

"CHAIR BARRON: Mr. Walker is here. He returned.

MR. LADUZINSKY [(OBJECTOR'S COUNSEL)]: Did he?

CHAIR BARRON: Yeah, he is here.

MR. FINKO [(MULDROW'S COUNSEL)]: He was not served to my knowledge.

CHAIR BARRON: Oh, so you are not here under subpoena?

MR. WALKER: No, I didn't receive any. I'm just here for support.

* * *

MEMBER JACONETTY: All right. Wait a minute. Is the witness here who is under subpoena?

MR. LADUZINSKY: Yes.

MR. FINKO: He is not under subpoena. He is not under subpoena. He has not been served.

MR. JACONETTY: He was never served, but he was under subpoena. He was here voluntarily.

CHAIR BARRON: And he just walked out on us.

* * *

MEMBER JACONETTY: *** I'm saying that a witness who was under subpoena who was in the objector's petition who could not be served was here of his own volition in this room and he can be called as a witness.

MR. SECLER [(BOARD'S COUNSEL)]: Absolutely.

MEMBER JACONETTY: So we would ask that, perhaps, the officer go and find him.

* * *

MR. FINKO: I would object to that process. ***

MEMBER JACONETTY: The law does not favor evasion of process, and the individual was here of his own free volition and was present in this hearing room. He has exempted himself from here, and the officer can testify as to relevant facts concerning his presence and leaving, and that is germane to the fact that the witness has decided not to present himself when he knows he's under subpoena.

* * *

MR. SECLER: Nor did he move to quash the subpoena."

¶ 11   The City's deputy chief of police Jack Genius testified as follows:

"Initially I was watching the proceedings as I was providing security, and I noticed Mr. Walker come in. I know Mr. David Walker for several years. He sat down, and the conversation proceeded. At one point the Board brought up that he was under subpoena, and then he got up.

I was directed by the Board to ask him to come back and I walked out. I met him outside the door as he was going to his car, and I explained to him, and he just said–he knew me and he said I got to go. And I'm saying that the Board is requesting him to come

in and testify, that the Board has asked me to go and to ask him to come in. And the gentleman over here, Mr. Price, told him: Please get in your car. Go home. Go home. Don't go in. *** Then he proceeded to go in his car and left."

¶ 12    Over Muldrow's objection, the Board passed a motion to "take an adverse finding on the petitions that were circulated by David Walker," explaining that based on Walker's actions that "we all witnessed," there was "a very strong indication that, had he been called to testify, it would have been adverse to his interests" and Muldrow's position. The Board then struck nomination petition page six circulated by Walker.

¶ 13    On January 27, 2021, the Board issued a unanimous written decision during an open session ordering that Muldrow's name "shall not appear on the ballot for the April 6, 2021 consolidated election." In its written decision, the Board stated that it " 'cannot close its eyes and ears' to such an unusual and overt act to avoid having to testify about the petition circulation process as demonstrated by David Walker" and to "ignore these facts would undermine the integrity of the electoral process and cripple the ability of the Electoral Board to properly complete its duties." The Board explained that it found Muldrow had control over Walker[4] and it was entitled to draw a negative inference from Walker's failure to testify. Specifically, the Board found that:

> "based on David Walker's overt action to avoid testifying and the active fleeing of the proceedings instead of complying with the subpoena issued for his testimony, that had Mr. Walker testified, his testimony would have revealed a pervasive and systematic pattern of fraud and false swearing in total disregard for the mandatory requirements of the Illinois Election Code that would justify the striking of all petition sheets he circulated. This further

---

[4]In reaching that conclusion, the Board relied, in part, on Illinois Pattern Jury Instructions, Civil, No. 5.01 (approved Dec. 8, 2011), which permits a jury to draw a negative inference from a party's failure to offer evidence or produce a witness within his or her control and ability to produce with the exercise of reasonable diligence.

bolstered by the Candidate's own evasive, non-communicative, and incredible testimony. Therefore, the Electoral Board *SUSTAINS* (3-0) the objections made in Paragraphs 13 through 15 of the Objector's Petition with respect to the circulator, David Walker. The Electoral Board finds that the Candidate's nominating petitions contain not more than *91 valid signatures*, which is 5 below the statutorily required minimum and, therefore, the Electoral Board finds that Candidate's Nomination Papers are *INVALID*." (Emphases in original.)

¶ 14        Muldrow filed a petition for judicial review of the Board's decision, which the circuit court denied. This court granted Muldrow's motion to expedite the appeal pursuant to Illinois Supreme Court Rule 311(b) (eff. July 1, 2018). On March 15, 2021, Muldrow filed nominating papers as a write-in candidate.

¶ 15                                ANALYSIS

¶ 16        Before turning to the merits, we must first address the objector's claim that Muldrow's appeal is moot because he filed nomination papers to be included on the ballot as a write-in candidate.

¶ 17        "A case on appeal becomes moot where the issues presented in the trial court no longer exist because events subsequent to the filing of the appeal render it impossible for the reviewing court to grant the complaining party effectual relief." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 28. "It is well established under Illinois law that the conclusion of an election cycle normally moots an election contest." *Id.* ¶ 36.

¶ 18        Here, filing nominating papers as an independent write-in candidate while litigation concerning his candidacy as an independent was pending did not render Muldrow's appeal moot

because, as a write-in candidate, his name did not appear on the ballot.[5] See generally 10 ILCS 5/17-16.1 (West 2018) ("A candidate seeking election to an office for which candidates are nominated at a primary election on a nonpartisan basis and who is defeated for his or her nomination at the primary election is ineligible to file a declaration of intent to be a write-in candidate for election in that general or consolidated election."). Although the election has passed, which generally renders an election contest moot, this case falls within the public interest exception to the mootness doctrine. The public interest exception requires that (1) the question is of a public nature, (2) an authoritative resolution will guide public officers, and (3) the question is likely to recur. *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 9. The issues raised in this appeal concern the admissibility of affidavits for the purpose of rehabilitating signatures found to be invalid during a records examination: whether it is permissible to draw a negative inference against a candidate for failing to produce a circulator witness to testify before the Board and whether the Board has standing to participate in judicial review proceedings. Questions relating to election law are inherently a matter of public concern. *Id.* ¶ 11. In addition, since these issues are likely to recur, an authoritative resolution is desirable to guide public officers.

¶ 19                                              Standards of Review

¶ 20            "As in any election dispute, we are mindful of the fact that 'ballot [access] is a substantial right and not to be lightly denied.' " *Solomon v. Scholefield*, 2015 IL App (1st) 150685, ¶ 16 (quoting *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 460-61 (2008)). Where a circuit court has reviewed an electoral board's decision, we review the board's decision and not the decision of the circuit court. *Burns v. Municipal Officers Electoral Board of the Village of Elk Grove Village*, 2020 IL 125714, ¶ 10.

---

[5]The objector's motion to dismiss the appeal taken with this case is denied.

¶ 21　　　　An electoral board is viewed as an administrative agency, and the applicable standard of review depends on the type of question being reviewed. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). An electoral board's "findings and conclusions on questions of fact are deemed *prima facie* true and correct," and we will not overturn such findings on appeal unless they are against the manifest weight of the evidence. *Harned v. Evanston Municipal Officers Electoral Board*, 2020 IL App (1st) 200314, ¶ 12. A factual finding is "against the manifest weight of the evidence if the opposite conclusion is clearly evident." *Cinkus*, 228 Ill. 2d at 210. A mixed question of fact and law is subject to the clearly erroneous standard of review and is one in which "the historical facts are admitted or established, the controlling rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Cunningham v. Schaeflein*, 2012 IL App (1st) 120529, ¶ 19. A finding is "clearly erroneous" "only where the reviewing court, on the entire record, is 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 22　　　　　　　　　　　　　　Admission of Affidavits

¶ 23　　　　Turning to the merits, Muldrow first argues that "[b]y denying Candidate the ability to offer affidavits into evidence, and present argument based upon those affidavits, the Electoral Board denied Candidate a meaningful opportunity to be heard, as allowed under the Electoral Board's Rule 8."

¶ 24　　　　Here, Board Rule 12 governs the admissibility of evidence, which provides that:

　　　　　　"The Board will consider such admissible evidence as may be submitted, including, but not limited to, properly authenticated public records, affidavits, other documentary

evidence, and oral testimony. In view of the fact, however, that the Board must hear and pass upon objections within a limited time, extended examination and cross examination of witnesses will not be permitted and is subject to the discretion of the Board.

The Board will, where practicable and appropriate, follow, *but will not be bound by*, rules of evidence, procedure, and practice that prevail in Illinois courts of law including the Illinois Code of Civil Procedure and the Rules of the Illinois Supreme Court." (Emphasis added.)

Although Muldrow argues that the excluded affidavits were relevant and the "Illinois Rules of Evidence govern the admissibility of sworn testimony," the Board was "not [ ] bound by" those rules in determining admissibility of the affidavits. See *Bergman v. Vachata*, 347 Ill. App. 3d 339, 348 (2004) (electoral board rules "govern the admissibility of evidence before the Electoral Board"). Muldrow also argues that the affidavits were in "substantial compliance" and admissible to rehabilitate signatures, but the Board determined that the "proposed affidavits were insufficient on their face and of little evidentiary weight," noting that "[m]any of the proffered affidavits d[id] not have anything written or printed by the affiant (or otherwise)" to provide an example of how the voters printed and signed their names. Nothing in this record demonstrates that the Board's decision to exclude the identified affidavits offered to rehabilitate signatures was either against the manifest weight of the evidence or clearly erroneous. See *id.* (the fact that a reviewing court would rule differently on the validity of a signature did not justify reversal of the Board's factual findings).

¶ 25                                Evidence of Fraud in Petition Papers

¶ 26        Muldrow also argues that the objector did not meet her burden of proof regarding the allegations of fraud because she pled "conclusory allegations, without a single fact in support." He

claims that because there was "no clear and convincing evidence of fraud by any circulator anywhere," "it was improper for the Electoral Board to assume fraud" and it erred in "strik[ing] a sheet from [his] petitions."

¶ 27 Section 7-10 of the Election Code requires nomination papers to include a circulator's signed, sworn statement certifying "that the signatures on this sheet were signed in my presence, and are genuine, and that to the best of my knowledge and belief the persons so signing were at the time of signing the petitions qualified voters." 10 ILCS 5/7-10 (West 2018); *Cunningham*, 2012 IL App (1st) 120529, ¶ 22. "The affidavit requirement is a mandatory requirement of the Election Code," and petition papers that fail to comply are invalid. *Cunningham*, 2012 IL App (1st) 120529, ¶ 23; *Crossman v. Board of Election Commissioners*, 2012 IL App (1st) 120291, ¶ 11. The Board is entrusted to decide whether "the certificate of nomination *** or petitions on file are valid or whether the objections thereto should be sustained." 10 ILCS 5/10-10 (West 2018).

¶ 28 To begin with, the objector's allegations of fraud and false swearing in her petition were plead with specificity and were not conclusory or generic.[6] As to whether the allegations of fraud and false swearing were proved by clear and convincing evidence, the Board found Muldrow's "testimony to be incredible" and that finding was "bolstered" by Walker's "unusual and overt act to avoid having to testify about the petition circulation process." Despite having actual knowledge that the Board had issued a subpoena for him to appear and testify, Walker abruptly left the hearing room. When directed by the security officer to return to testify, he departed the premises at the

---

[6]The objector pled, in part, that the nomination papers (1) "contain the names of persons who did not sign said papers in their own persons, and said signatures [were] not genuine and [were] forgeries," (2) include the affidavits of six identified circulators that were "false and constitute[d] a false swearing because the purported circulator did not actually obtain, solicit or witness the affixing of voters' signatures," and (3) "demonstrate a pattern of fraud and disregard of the Election Code containing a high percentage of not registered, not genuine signatures, out of district, incomplete addresses and duplicate signatures, to such a degree that every sheet circulated by said individuals [was] invalid, and should be invalidated in order to protect the integrity of the electoral process." Attached to the petition was an appendix supporting the objector's allegations.

behest of a Muldrow ally. See *Canter v. Cook County Officers Electoral Board*, 170 Ill. App. 3d 364, 370 (1988) (negative inference from subpoenaed circulator's refusal to testify upheld). Based on these events, the Board permissibly drew a negative inference against Muldrow.

¶ 29     We will not substitute our judgment for that of the Board on its credibility assessment of Muldrow's testimony and determination of the weight of the evidence. *Crossman*, 2012 IL App (1st) 120291, ¶ 14; *Bergman*, 347 Ill. App. 3d at 347-48. Moreover, this court has previously recognized that the Board " 'cannot close its eyes and ears if evidence is relevant to the protection of the electoral process,' " which is particularly relevant in this case where the Board witnessed "explicit conduct demonstrating utter and contemptuous disregard for the law." *Fortas v. Dixon*, 122 Ill. App. 3d 697, 701 (1984); see *Canter*, 170 Ill. App. 3d at 368 (circulator's refusal to "testify supports the board's finding that improper methods were used to collect the signatures"); *Daniel v. Daly*, 2015 IL App (1st) 150544, ¶ 33 ("the Board permissibly drew a negative inference that petitioner's failure to appear and testify was because petitioner would have offered testimony detrimental to the success of his objection").

¶ 30     Based on this record, the Board's finding that petition sheet number six, circulated by Walker, evidenced "a pattern of fraud, false swearing, and total disregard for the requirements" of the Election Code was not error under any standard of review. See *Crossman*, 2012 IL App (1st) 120291, ¶ 11 ("Where the signature sheets of a nominating petition submitted by a circulator evidence a pattern of fraud, false swearing, and total disregard for the requirements of the Code, the sheets circulated by that individual should be stricken in their entirety."); *Harmon v. Town of Cicero Municipal Officers Electoral Board*, 371 Ill. App. 3d 1111, 1116 (2007) (the Board may refuse to count signatures witnessed by the circulator where there was evidence questioning the circulator's honesty); *Huskey v. Municipal Officers Electoral Board for the Village of Oak Lawn*,

156 Ill. App. 3d 201, 205 (1987) (circulator's pattern of disregard for the mandatory requirements of the Election Code that affected the integrity of the political process denied candidate's place on the ballot). Therefore, the evidence in the record supports the Board's finding that Muldrow's nomination papers were invalid, resulting in his name being stricken from the election ballot.

¶ 31                                              Board Member Recusal

¶ 32        Muldrow argues that reversal of the Board's decision is warranted because the "Board denied [him] due process by denying his request to recuse and appoint three public members." Essentially, he claims that his nominating papers were not considered by a fair and impartial tribunal.

¶ 33        Under section 10-9 of the Election Code, "municipal officers electoral board *** hear and pass upon objections to the nomination of candidates for officers of municipalities." 10 ILCS 5/10-9(3) (West 2018). "[I]t is indeed a well-settled principle of law that concepts of due process apply to administrative hearings, and the parties are guaranteed the right to a fair and impartial tribunal." *Girot v. Keith*, 212 Ill. 2d 372, 380 (2004). Generally, a board member is subject to disqualification and substitution where he or she (1) is a "candidate for the office with relation to which the objector's petition is filed" (10 ILCS 5/10-9 (West 2018)), (2) would be a necessary witness at the objection hearing and subject to assessing his or her own credibility (*Girot*, 212 Ill. 2d at 379-80), or (3) holds "a pecuniary/financial interest in the outcome" (*Zurek v. Franklin Park Officers Electoral Board*, 2014 IL App (1st) 142618, ¶¶ 87 (citing *Anderson v. McHenry Township*, 289 Ill. App. 3d 830, 833 (1997))). Muldrow raised none of these reasons as a basis for recusal.

¶ 34        Here, Muldrow moved to disqualify Board members[7] based upon allegations of political bias. This case is analogous to *Ryan v. Landek*, 159 Ill. App. 3d 10, 13 (1987), and *In re Objection*

---

[7]On appeal, Muldrow's arguments for disqualification did not include the Board's law firm.

*of Cook*, 122 Ill. App. 3d 1068, 1072 (1984), where this court rejected the candidate-objector's claim that "the board refused to afford him a fair, impartial and unbiased hearing" raising grounds of political bias. *Landek*, 159 Ill. App. 3d at 12. The *Landek* court adopted *Cook*'s reasoning that a candidate-objector did not have an implied right to substitute board members whenever a candidate-objector feels a conflict was present and instead was limited to the relief provided by the statute. See *id.* at 13 ("[t]he statutory provisions allowing substitution under particular circumstances and judicial review adequately insure an objector a fair hearing"). Similar to *Landek* and *Cook*, Muldrow failed to overcome a presumption of honesty of the Board members based on political bias. See also *Ayers v. Martin*, 223 Ill. App. 3d 397, 400 (1991); see *Girot*, 212 Ill. 2d at 380-81 (" '[t]o prove bias, the plaintiff must overcome a presumption of honesty by showing in the record that the administrative proceedings were either tainted by dishonesty *or contained an unacceptable risk of bias*' " (emphasis in original)). Therefore, reversal of the Board's findings was not warranted on this basis.

¶ 35                                                Board's Brief

¶ 36        In his final claim, Muldrow argues that the Board "as an entity has no standing to participate in the petition for judicial review, or this appeal."

¶ 37        We will not address Muldrow's claim that the Board was not entitled to file a memorandum during the judicial review proceedings because, in this administrative review action, we review the Board proceedings and not the trial court proceedings. As to the proceedings in this court, we granted the Board's request to join the objector's brief because Alderman Barron, Alderman Jones, and Jaconetty were each named and served in their official capacities as members of the Board. See *Zurek*, 2014 IL App (1st) 142618, ¶ 55 (the Board as a nominal defendant "should have

standing to file a brief"); *Muldrow v. Municipal Officers Electoral Board for the City of Markham*, 2019 IL App (1st) 190345, ¶ 14. The Board did not file a separate brief in this matter.

¶ 38                                        CONCLUSION

¶ 39        For the reasons stated, we affirm the Board's decision that Muldrow's name "shall not appear on the ballot for the April 6, 2021 Consolidated Election."

¶ 40        Affirmed.

---

**No. 1-21-0248**

---

| | |
|---|---|
| **Cite as:** | *Muldrow v. Barron*, 2021 IL App (1st) 210248 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-COEL-0013; the Hon. James R. Carroll, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Andrew Finko, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Steven M. Laduzinsky and Natalie Wilkins, of Laduzinsky & Associates, P.C., of Chicago, for appellee Sandra Curtis. |
| | Kimberly M. Foxx, State's Attorney, of Chicago (Marie D. Spicuzza, Assistant State's Attorney, of counsel), for appellee Karen Yarbrough. |
| | Burton S. Odelson and Ross D. Secler, of Odelson, Sterk, Murphey, Frazier & McGrath, Ltd., of Evergreen Park, for other appellees. |

---